**Luther J. QUALLS, Appellant,**

v.

**Byron E. MILLER, Appellee.**

No. 7803.

Court of Civil Appeals of Texas.

Texarkana.

April 11, 1967.

Rehearing Denied May 9, 1967.

W. James Kronzer, Brown, Kronzer, Abraham, Watkins & Steely, Kenneth D. Harrison, John C. Werner, Miller & Gann, Houston, for appellant.

Blake Tartt, Fulbright, Crooker, Freeman, Bates & Jaworski, Howell E. Stone, Talbert, Giessel, Barnett & Stone, Houston, for appellee.

FANNING, Justice.

Plaintiff Qualls sued defendant Miller for damages for personal injuries sustained by Qualls on Jan. 14, 1964, when his automobile was struck from the rear by an automobile operated by Miller. The case was tried to a jury. The jury convicted defendant Miller of negligence in causing the collision and found that such negligence was the proximate cause of such collision. The jury acquitted plaintiff Qualls of any contributory negligence. The jury further found that the subject collision was the direct and proximate result of physical injuries to plaintiff Qualls. Special Issue No. 14 and the jury's response thereto, and the trial court's instructions and definitions given therewith are found below.[1]

---

1. "SPECIAL ISSUE NO. 14

"What amount of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate the Plaintiff, Luther J. Qualls, for such injuries and damages, if any, as have directly and proximately resulted and which will, in reasonable probability directly and proximately result in the future from such injuries, if any, which you find from a preponderance of the evidence were sustained by Luther J. Qualls as a direct and proximate result of the collision in question, taking into account such of the following elements which you find from a

Appellant's original brief presents five points of error. In his reply brief he has narrowed down his points to four. Appellant by point 1 contends that there is no credible evidence that the jury awarded any sum of money for the general elements of damages.

Special Issue No. 14 submitted the elements of damages .generally and the jury answered the general issue with the amount of $1,200.00. The appellant produced evidence from three jurors, including the foreman, by which he sought to show that the jury awarded $1,100.00 for past medical expenses and $100.00 for "pills" in the future, and that the jury did not award him anything for the elements of damages (c), (loss of earnings from Jan. 14, 1964 to date of trial), (d) (diminution of future earning capacity), (e) (such physical pain and mental anguish, if any, suffered by Qualls from Jan. 14, 1964 to date of trial), and

(f) (such physical pain and mental anguish, if any, which Qualls would in reasonable probability suffer in the future).

█ We have carefully examined the testimony of the three jurors and have reached the conclusion that while the evidence of such jurors strongly preponderates in favor of the view of appellant in his contention that the jury did not award plaintiff anything for the elements of damages (c), (d), (e), and (f), however, we are not prepared to say as a matter of law that the record conclusively shows that the jurors did not award any sum of money for damage elements (c), (d), (e), and (f). If the damage issues had been submitted separately and if the jury had found "none" with respect to damage element (e) (past physical pain and suffering etc., suffered by Qualls), we think that such an answer would have been contrary to the evidence inasmuch as the jury,

preponderance of the evidence and none other:

(a) Such reasonable medical expenses, if any, necessarily incurred in the treatment of Luther J. Qualls' injuries, if any, from January 14, 1964, to the date of this trial.

(b) Such reasonable medical expenses, if any, that will in reasonable probability be necessarily incurred in the future in the treatment of his injuries, if any.

(c) Such loss of earnings, if any, suffered by Luther J. Qualls from January 14, 1964 to the date of this trial.

(d) Such diminution of earning capacity, if any, which Luther J. Qualls will in reasonable probability suffer in the future.

(e) Such physical pain and mental anguish, if any, suffered by Luther J. Qualls from January 14, 1964 to date of this trial.

(f) Such physical pain and mental anguish, if any, which Luther J. Qualls will in reasonable probability suffer in the future.

Answer by stating the amount, if any, in dollars and cents.

To which the jury answered '$1,200.00.'

You are instructed that you must not take into consideration in determining the amount of damages, if any, nor allow anything for any medical expenses, physical pain, mental anguish, lost earnings or lost

earning capacity, if any, either past or future, which are directly or proximately caused by any pre-existing injury or bodily condition of Luther J. Qualls, if any, except insofar as such pre-existing injury or bodily condition, if any, shall have been aggravated as a direct and proximate result of the occurrence of January 14, 1964, if you so find that they have been so aggravated.

"DEFINITION IN CONNECTION WITH SPECIAL ISSUE NO. 14

By the term 'medical expenses' as used in subparagraph (a) of this Special Issue is meant such reasonable doctors' bills and drugs, if any, which have been necessarily incurred in the treatment of the Plaintiff's injuries, if any, from January 14, 1964 to the date of this trial and none other. By the term 'medical expenses' as used in subparagraph (b) of this Special Issue is meant such reasonable doctors' bills, hospital bills and drugs, if any, that will in reasonable probability be necessarily incurred in the future in the treatment of the Plaintiff's injuries, if any, and none other.

In arriving at your answers to the questions, you are the sole judges of the credibility of the witnesses and the weight to be given to their testimony, but in matters of the law you must be governed by the instructions given you by the Court in this charge."

upon ample evidence, found by Issue 13 that the subject collision was the direct and proximate result of physical injuries to plaintiff Qualls. Mr. Qualls testified positively as to his past pain and suffering and was corroborated in this respect by his wife's testimony. Furthermore, the existence of physical pain and suffering may be presumed in cases where it is a natural consequence of an injury such as was received by the appellant here. In this connection see English v. Hegi, Tex.Civ.App., 337 S.W. 2d 860, no writ (1960), and Texas & P. Ry. Co. v. Curry, 64 Tex. 85 (1885). If, as above stated, the issue as to element (e) (past pain and suffering) had been separately submitted and had been answered "none", this court under this record would have no difficulty in reversing and remanding this cause for that reason alone under the authority of Bolen v. Timmons, Tex. Civ.App., 407 S.W.2d 947, no writ (1966), and authorities cited therein, and under authority of the recent case of Taylor v. Head et al., 414 S.W.2d 542 rendered April 4, 1967.

However, this case is different from the Taylor v. Head case above referred to in that here the various damage elements were not separately submitted but were submitted all in one issue. While we are of the view that we can not sustain appellant's first point as a matter of law under the posture that the same is shown by the record here, and we overrule appellant's first point, nevertheless we think appellant's second point is his reply brief is well taken and should be sustained.

Appellant's said second point reads as follows:

"Regardless of whether the record conclusively demonstrates that the jurors did not award any sum of money for the general damage elements, a new trial should be granted because the damages awarded are clearly inadequate and the finding of the jury in response to Special Issue No. 14 is so against the great weight and overwhelming preponderance of the

evidence as to be clearly wrong and unjust."

Rule 328, Texas Rules of Civil Procedure provides, inter alia, that: "New trials may be granted when the damages are manifestly too small or too large. * * * "

■ In Bolen v. Timmons, Tex.Civ.App., 407 S.W.2d 947, no writ (1966), it was stated in part as follows:

" * * * The Dallas Court of Civil Appeals in Berry v. Lowery, Tex.Civ. App., 266 S.W.2d 917, 921 has quoted with approval the following statement:

' "* * * though the amount of damages is ordinarily left to the discretion of the jury under the evidence before them, yet they cannot ignore the undisputed facts and arbitrarily fix an amount neither authorized nor supported by the evidence. (Citing cases) In the instant case the verdict was manifestly wrong under the evidence, and the court should have granted a new trial." '

"The Supreme Court of Texas in the same case (Lowery v. Berry, 153 Tex. 411, 269 S.W.2d 795, 1954), after granting a writ, held: 'The answer of the jury that she suffered no damages is not only unsupported by any evidence, but is directly contrary to all the evidence.' Exactly the same may be said to be true in the instant case.

"Appellee seeks to distinguish the instant case from Lowery on the theory that the child in that case suffered unquestionably serious injuries. We do not believe a quantitative basis is a fair ground upon which to distinguish the cases, where all the evidence shows Harold did suffer physical pain and at least some mental anguish as a result of the rear-ending. It is ordinarily the prerogative of a jury to set the amount of damages but they have no authority to completely ignore the undisputed facts and arbitrarily fix an amount neither au-

thorized nor supported by the evidence. Berry v. Lowery, supra.

"The judgment of the trial court is reversed and remanded." (interpolation ours)

In Edmondson v. Keller, Tex.Civ.App., 401 S.W.2d 718, no writ (1966), it was stated in part as follows:

"The finding of the jury of no damages for past and future pain and suffering and mental anguish was against the great weight and preponderance of the evidence because the undisputed evidence shows that the plaintiff sustained substantial injuries or in any event some damages.

"As a result of the collision plaintiff was thrown from the car and onto the highway in an unconscious condition, and was treated by Dr. Sewell in his hospital in Belton for a few days and then taken to a hospital in Seguin for further treatment. The evidence as to her injuries and the medical treatment was fully detailed on the trial and there is no useful purpose in reviewing such in further detail here.

"The answer of the jury that plaintiff suffered no damages is directly contrary to all of the evidence. Lowery v. Berry, 153 Tex. 411, 269 S.W.2d 795; Floyd v. Organ, Tex.Civ.App., 359 S.W.2d 190, n. r. e.

"The amount of damages is largely within the jury's discretion. However, they must award something for every element of damage resulting from an injury. Evers v. Langerhans, Tex.Civ. App., 122 S.W.2d 208, n. w. h.; Clark v. Spurdis, Tex.Civ.App., 258 S.W. 881, error dism. * * *"

The statement of facts in this case contains 323 pages. Plaintiff-appellant presented the testimony of plaintiff Qualls, Mrs. Luther J. Qualls, Frank F. Parrish, M.D., David J. Braden, M.D., Doyle Edwin Neal, Thomas H. McGuire, M.D., and the testimony of defendant-appellee Miller under the adverse witness rule, in the trial of the cause. Defendant-appellee in the trial introduced in evidence a written report of Dr. Ed Fountain, M.D., which was read in evidence, and also read into the record the docket sheet showing various dates of previous settings of the case. On the motion for new trial plaintiff-appellant introduced in evidence the testimony of jurors Boyce, Hawkins and Eckhardt. The above referred to matters constituted all of the evidence introduced in the trial both on the merits and on the motion for new trial.

Appellant Qualls was 54 years old at the time of the collision in question and had a life expectancy of 20.55 years. He had a sixth grade education and was a welder and electrician. While stopped in his car behind a line of traffic waiting for a traffic signal he was struck from the rear by the automobile being driven by defendant-appellee. The force of the collision wedged Mr. Qualls between the steering wheel and the door of his car with his head and neck against the windshield. As hereinbefore stated the jury found that the collision proximately caused physical injuries to Mr. Qualls. Mr. Qualls testified in great detail as to his back and neck being injured and his pain and suffering, as well as to his medical treatment and drugs prescribed and taken, (which other evidence shows that same were reasonable and necessary), and testified in detail as to other factors relating to damages with respect to the other elements of damages claimed by him and submitted by the court in Special Issue No. 14.

Following the collision Mr. Qualls was treated by Dr. Frank Parrish, M.D., an orthopedic surgeon; Dr. Parrish x-rayed Mr. Qualls, placed him in traction for about two months after the initial examination and for an additional two months about a year later. Mr. Qualls had seen Dr. Parrish about ten times since the collision at the time of the trial and was still under Dr. Parrish's care at the time of the trial.

Mr. Qualls was also treated by Dr. Braden, an internist; had seen him about 16 times by the time of the trial, and he was still under his car at the time of the trial. Mr. Qualls further testified that he was taking nine pills per day in treatment of his injuries, all prescribed by Dr. Braden, (which the evidence showed cost him from about $1.00 to $1.50 per day), and that without the pills he "couldn't go."

Mr. Qualls also saw Dr. Fountain, a neurosurgeon, one time for examination, and Dr. Thomas McGuire, also a neurosurgeon, two times for examination.

Mr. Qualls testified that he earned $9,-200.00 in 1964 and $12,500.00 in 1965, but that he could have earned more money if he had not been injured and that he was limited as to how much he could lift, climb and pull, and that he had only been able to climb with the medical assistance (pills) that he had been receiving for the past two years. He further testified that he had not been able to do yard work since the collision because any stooping position created a tremendous pain in the low back, in the back of his neck and in between his shoulder blades. Regarding his work Mr. Qualls testified that because work was so plentiful he was able to choose light work, and that in this respect he had been helped by his union brotherhood. He said if a particular job got too tough for him he would quit and find a job affording lighter work and that he refused to do some jobs because they were hazardous to him in the light of his condition, and that his refusal resulted in his being fired on two different occasions. Mr. Qualls also testified that he quit a job on Dec. 16, 1965 because the job was too tough for him, and that he did not go back to work until about a month later, on Jan. 11th or 12th, of 1966, and that thereby he lost earnings—which loss, according to his 1965 earnings, would be approximately $1,000.00 loss.

Dr. Parrish had performed a back operation on Mr. Qualls in 1957, but he was released six weeks after the operation and allowed to go back to work. Mr. Qualls further testified to the effect that he was thereafter able to perform his work without any further complications and Dr. Parrish's assistance was not again needed until 1962, when Dr. Parrish treated him for a broken leg. Mr. Qualls testified that after his leg healed and he recovered from a lung condition caused by a blood clot in his lung which hospitalized him in 1962, he was able to do his work as an electrician and welder satisfactorily and that he did not have to see Dr. Parrish again for any reason until after the collision in question of Jan. 14, 1964.

Mrs. Qualls' testimony was to the effect that after the collision Mr. Qualls has had trouble sleeping, that she has observed him appearing to be in pain; that he had to roll out of bed in the morning as opposed to getting up directly because of the stiffness in his back; that he takes four kinds of medications daily; that since the collision she has had to put Mr. Qualls' footwear on when he wore shoes with laces in them; that subsequent to the collision Mr. Qualls had been extremely nervous and high tempered, that he took at least six pills per day; that he had been very congenial and easy to get along with prior to Jan. 14, 1964.

Doyle Edwin Neal, a construction electrician who had worked with Mr. Qualls in construction, and testified that he had observed Mr. Qualls' work in 1948, 1949, 1955 and 1961, and that on all such occasions Mr. Qualls performed the duties of a welder-electrician satisfactorily, which is ordinarily heavy work, that he next came in contact with him in February, 1965 on a job where he was general foreman, and that after observing Mr. Qualls he made him a foreman on the job after about thirty days because Mr. Qualls was not able to perform the work that an average journeyman wireman was performing, and thus gave him lighter work because he was unable to do heavy work, and that even as a foreman Mr. Qualls needed close super-

vision, but that with the close supervision given him, Mr. Qualls was able to do his job as foreman, which was lighter work.

Dr. Parrish, an orthopedic surgeon (whom defendant-appellee stipulated was an eminently qualified orthopedic surgeon) testified to the effect that he operated on Mr. Qualls' back in 1957 and removed a ruptured disc at the L-4 L-5 level; that Mr. Qualls recovered from such operation in a short time and returned to work; that in 1962 he treated Mr. Qualls for a broken leg; that he next saw Mr. Qualls on January 29, 1964, at which time he complained of back pain and an aching in his left leg; that certain movements made during the course of his examination of Mr. Qualls produced pain in his back and that since that time he had continued to follow Mr. Qualls with complaints referable to his back; that in his opinion, based on reasonable medical probability, the automobile accident in question was the cause of Mr. Qualls' condition and that in his opinion, based upon reasonable medical probability, Mr. Qualls would have to have a bone fusion operation on his back at the L4 L5 level; that a bone fusion is a painful operation; that as a result of the operation, Mr. Qualls could probably do some light work within three months thereafter, but that "as far as any great strain on his back that he might do, heavy lifting or a lot of pulling heavy objects, he might be off 8 months to a year"; that his fee for the operation would be about $600.00, and that the hospital charge would be about $500.00, which charges were reasonable and customary charges; and that he never on any occasion doubted anything Mr. Qualls told him during the course of his examination and treatment of Mr. Qualls. On cross-examination Dr. Parrish testified that he found some osteoarthritic changes in Mr. Qualls' neck which produced pain, but that he has never recommended that Mr. Qualls have an operation on his neck and that in his opinion Mr. Qualls did not have a herniated disc in his neck as a result of the accident.

Dr. David Braden, an internist, as appellant's witness, testified to treating Mr. Qualls for a blood clot in his left lung in 1962, that he recovered from such condition, that he gave him a check-up in 1963 and found him suffering from abnormal high blood pressure at that time; that he put him on Diuril, a blood pressure lowering medication; that he next saw him in 1963 and found that his blood pressure without control by medications was then good; that he next saw Mr. Qualls on Jan. 24, 1964, when Mr. Qualls told him about the automobile collision of Jan. 14, 1964; that upon examining Mr. Qualls he found his blood pressure elevated considerably, and that in his opinion, based on reasonable medical probability, the accident placed sufficient stress upon Mr. Qualls to produce this blood pressure elevation; that he put Mr. Qualls back on Diuril, prescribed a soma compound for his headache; and prescribed other medications such as aventil and librium; that he prescribed 8 or 9 pills per day in treatment of Mr. Qualls' condition, which pills cost from $1.00 to $1.50 per day (which charges were reasonable and customary); that in his opinion, based upon reasonable medical probability, Mr. Qualls' blood pressure problems are permanent and that he would continue to need the medication afforded by the prescribed pills.

Dr. Thomas McGuire, a neurosurgeon, as appellant's witness, testified to the effect that after examination of Mr. Qualls on March 25, 1965, he found numbness over the right arm and over the left leg as compared to the other extremities, and that based on his examinations and on reasonable medical probability, he was of the opinion that Mr. Qualls had a sprain to his neck as a result of the automobile accident in question, but he could not say in reasonable medical probability whether or not Mr. Qualls' condition would be temporary or permanent.

Defendant-appellee read into the record Dr. Edmund F. Fountain's Feb. 24, 1965, medical report concerning Mr. Qualls. Dr.

Fountain, a neurosurgeon, directed the report to Dr. Parrish. Pertinent portions of said report are bound below.[2] Defendant next introduced in evidence the docket sheet of the case showing the various settings of the case.

■ Plaintiff's evidence showed past medical and drug bills, with the drug bills being very substantial; the evidence showed that plaintiff was placed on medication on or about Jan. 24, 1964 and continued thereon (with a few weeks intermission) until the date of trial, which was April 19, 1966, and the testimony showed that the reasonable cost of such medication was from $1.00 to $1.50 per day. Plaintiff's evidence as hereinbefore outlined also showed that in reasonable medical probability that plaintiff's future medical, hospital and drug bills would be substantial. As we view this record, under the great weight and overwhelming preponderance of the evidence, an award of $1,200.00 for past and future medical was too small for items (a) and (b) together, irrespective of items (c), (d), (e), and (f), for which some amounts of damage should have been awarded.

It is therefore our view that the great weight and overwhelming preponderance of the evidence shows that Mr. Qualls was entitled to recover reasonable compensation for each of the elements of damages submitted in Special Issue No. 14, including elements (a), (b), (c), (d), (e) and (f), and that the total verdict of $1,200.00 in response to Special Issue No. 14 was manifestly too small under the entire record in this cause. Rule 328, Tex.R.Civ.P.

After carefully reviewing the entire record in this cause in the light of the rules of law enunciated in the case of In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951), we hold that the jury's finding to Special Issue No. 14 was so contrary to the great weight and overwhelming preponderance of the evidence as to be clearly wrong and manifestly unjust.

Appellant's second point is sustained.

Appellant by his third point complains of alleged harmful jury misconduct relative to jurors mentioning personal experiences with troubles or injuries to their backs and other matters. While the alleged jury misconduct complained of may have adversely affected the amount of the verdict for plaintiff-appellant, we have reached the conclusion that it is unnecessary for us to pass upon this point since the cause must be reversed by reason of our sustaining appellant's second point, and the question of jury misconduct will not likely arise upon another trial.

2. " * * * Details of his history were thoroughly recorded in case they are needed at a later date. His neurologic examination showed good mobility of the head and neck. There was no muscle spasm or tenderness over the neck posteriorily. The arm reflexes were active and symetrical although the Achilles reflex on the left was diminished. Perhaps this diminution is the result of his disc protrusion of 1957. He had no sensory change in either upper extremity.

"There was a well healed midline lower lumbar scar. To firm pressure he stated he was 'a little sore' at the lumbosacral interspace. Straight leg raising could be carried out to 80–85 degrees on each side with no apparent evidence of pain. The only consistent sensory finding as to the lower extremities was an area over the dorsum of the left great toe and adjacent foot which seemed to be hypalgesic. If this is the case, it should be in the distribution of the L–5 nerve root.

"The patient stated that he was to have a spinal fusion carried out by you. The veracity of his statement could not be checked with you the following day since you were in surgery at the time. It is hoped that the opportunity of discussing him with you soon will be presented. In the event that you do plan to carry out this surgery and perhaps a myelogram beforehand, there should be no harm in carrying the Pantopaque to the cervical region to more thoroughly evaluate it. Nevertheless, nothing of a surgical nature in the neck is expected.

"The patient's x-rays have not yet been reviewed but are expected by mail from St. Joseph's Hospital shortly. * * * "

We also deem it unnecessary to pass upon appellant's fourth point which complains of the trial court's refusal of the request of the jury to have read to them portions of the testimony of Dr. Parrish, as this matter will not likely arise upon another trial.

The judgment of the trial court is reversed and the case is remanded for a new trial.

Reversed and remanded.