James Hamilton **BEDGOOD** and Robert E. Sorenson, Appellants,

v.

Herbert **MADALIN** and Wife Sally Madalin, Individually and as Surviving Parents of their Minor Son, Robert Madalin, Appellees.

No. 1394.

Court of Civil Appeals of Texas, Corpus Christi.

Oct. 11, 1979.

Rehearing Denied Nov. 15, 1979.

Floyd VanHuseman, Maddin, White, Huseman, Pletcher & Powers, Inc., Lev Hunt, Kleberg & Weil, Corpus Christi, for appellants.

Guy Allison, Corpus Christi, for appellees.

## OPINION

YOUNG, Justice.

The primary issues in this appeal are whether a bystander parent can recover damages for mental anguish resulting when he heard the impact sound caused by an automobile striking his son and then observed his son's injuries shortly before he died, and whether the various damage awards in this case are supported by the evidence.

This case arose out of an accident on September 14, 1974, wherein Robert Madalin, the eleven year old son of Herbert and Sally Madalin, was struck and killed by a car driven by James Hamilton Bedgood. At the time, Robert was playing with some friends on the frontage road in front of the Madalin home. Also, at the time, Robert E. Sorenson was a passenger in and the owner of the offending car.

The Madalins, individually and as surviving parents and personal representatives of their minor deceased son, Robert, brought this suit against Bedgood and Sorenson under the Texas Wrongful Death Act, Tex. Rev.Civ.Stat.Ann. art. 4671 (1940) and the Texas Survival Statute, Tex.Rev.Civ.Stat. Ann. art. 5525 (1958). They also sought recovery for their mental anguish resulting from the incident herein. Defendants admitted liability prior to trial. Thus, the

only evidence presented at the jury trial herein concerned the amount of damages.

Trial was to a jury which found that Dr. and Mrs. Madalin were entitled to $35,000.00 for their pecuniary loss, that their deceased son's estate was entitled to $25,000.00 for conscious pain and mental anguish, that Mrs. Madalin was entitled to $25,000.00 for her own mental anguish, that Dr. Madalin was entitled to $20,000.00 for his mental anguish, that Dr. Madalin was entitled to $5,000.00 for loss of earning capacity following the incident herein. The parties stipulated that the Madalins were entitled to $4,033.52 for funeral expenses. The trial court then entered judgment favorable to the Madalins for the amount of $114,033.52. Defendants' motion for new trial was overruled and they appealed.

Appellants have brought forward 21 points of error. Appellants' points 1, 2, and 12 through 15 concern the jury's award of $25,000.00 to Mrs. Madalin for mental anguish and $20,000.00 to Dr. Madalin for mental anguish.

On August 26, 1975, the original petition in this case was filed in the names of "Herbert Madalin and wife, Sally Madalin, individually and as surviving parents and personal representatives of their minor deceased son, Robert Madalin." The action alleged negligence by the defendants. Although they sought damages under the Texas Wrongful Death Act and the Texas Survival Statute, they made no specific allegations about damages for mental anguish.

Defendants filed their second amended answer on March 28, 1977, in which they denied the defendants were liable for any sorrow, anguish or grief suffered as a result of Robert's death. On March 28, 1977, the defendants also filed an admission of liability which stated:

> "Now come James Hamilton Bedgood and Robert E. Sorenson, defendants and file this their Admission of Liability for such damages as the jury may determine resulted to plaintiffs from the accident of September 14, 1974, described in Plaintiffs' petition."

The case went to trial on February 13, 1978. At the beginning of the trial the trial judge stated that he thought the pleadings were sufficiently broad to permit the plaintiffs to recover damages for mental anguish if they could establish that they actually incurred emotional damages as a result of seeing their son killed. The judge also concluded that the Admission of Liability admitted liability for Dr. and Mrs. Madalin's mental anguish. There was then a discussion by defendants' counsel about whether the defendants had been given proper notice of the cause of action for mental anguish. The court determined that they had, and ordered the parties to proceed to trial. Defendants made no motion for continuance.

Appellants' point 1 contends that the trial court erred in ruling that the Admission of Liability had the effect of admitting liability for the appellees' mental anguish.

Appellants' argument here seems to be that because the Admission of Liability closed with the phrase "described in Plaintiffs' petition" and because plaintiffs' petition does not mention Dr. and Mrs. Madalin's claim for mental anguish that liability in that regard was not admitted. We disagree. According to the "doctrine of the last antecedent" normally used in construing statutes, relative and qualifying phrases are to be applied to the words or phrases immediately preceding them, and are not to be construed as extending to others more remote. *Quindlen v. Prudential Insurance Company of America*, 482 F.2d 876, 878 (5th Cir. 1973); *City of Corsicana v. Willmann*, 147 Tex. 377, 216 S.W.2d 175, 176 (1949). We think this rule of construction may also be applied in this case. The phrase herein, "described in Plain-petition" modifies the phrase "accident of September 14, 1974," rather than the word "damages" stated earlier in the sentence. Thus, we hold that the appellants admitted liability for such damages, including for mental anguish, as the jury might determine resulted to plaintiffs from the September 14, 1974, accident. Appellants' point 1 is overruled.

Appellants' point 2 contends the trial court erred in rendering judgment for Dr. and Mrs. Madalin for mental anguish because there were no pleadings concerning mental anguish, because recovery was barred by the two year statute of limitations and because as a matter of law Dr. and Mrs. Madalin could not recover damages for mental anguish. Concerning the lack of pleadings, even if the appellants were not notified of the cause for mental anguish prior to trial, the court, by his ruling at the beginning of the trial, in effect, allowed a trial amendment in this regard and no request for a continuance based upon surprise was made by the appellants to preserve the error. See *Hardage v. Rouly*, 349 S.W.2d 616, 618 (Tex.Civ.App.— Beaumont 1961, writ ref'd n. r. e.). The lack of pleadings contention is overruled.

About the limitations allegation, the cause of action for mental anguish relates back to the time the suit was filed in that the amendment did not arise out of a new, distinct or different transaction and occurrence. Tex.Rev.Civ.Stat.Ann. art. 5539b (1958), *Leonard v. Texaco, Inc.*, 422 S.W.2d 160 (Tex.Sup.1967). The assertion concerning limitations is overruled.

Appellants' final argument under point 2 states that Texas will not allow recovery for the mental anguish of a bystander who, for example, observes an accident which causes the death of his child. We disagree. In *Landreth v. Reed*, 570 S.W.2d 486, 489 (Tex.Civ.App.—Texarkana 1978, no writ), the Court reviewed Texas authorities in this area and concluded that Texas would follow the lead set by *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), and allow a bystander's recovery where a person's negligence causes manifested mental anguish which was foreseeable by the negligent party. In determining foreseeability in this type of case the Court in *Landreth* set out several relevant factors:

"(1) whether the plaintiff was located near the scene of the accident;

(2) whether the shock resulted from a direct emotional impact upon the plaintiff from a contemporaneous perception of the accident as distinguished from learning of the accident from others after its occurrence; and

(3) whether the plaintiff and the victim were closely related."

See also *Covington v. Estate of Foster*, 584 S.W.2d 726 (Tex.Civ.App.—Waco 1979, no writ). In addition, the foreseeability that a parent would either witness or be within earshot of the accident can be evaluated by studying such factors as follows:

"(1) age of the child;

(2) the type of neighborhood in which the accident occurred;

(3) the familiarity of the tortfeasor with the neighborhood;

(4) the time of day; and

(5) all other circumstances which would have put the tortfeasor on notice of the likely presence of a parent."

*D'Ambra v. United States*, 354 F.Supp. 810, 820 (D.C.R.I.1973), *Leong v. Takasaki*, 55 Haw. 398, 520 P.2d 758, 765 (1974); *Arauz v. Gerhardt*, 68 Cal.App.3d 937, 137 Cal. Rptr. 619 (1977).

In the instant case, Dr. Madalin stated that on the day of the accident he and Robert were in the back yard working together. Robert then left to play with some friends at the front of the house. Dr. Madalin stayed in the back yard where he was about 100 feet from the place of the accident. He said he heard a vehicle approaching. Then, when asked whether he heard the car hit his son he replied that he heard a loud scream from Robert. He then stated that a few seconds later he heard a loud thud "like a watermelon being dropped from a great height." Dr. Madalin then headed for the back door and went through the house to the front yard. He estimated that from the time of the scream to the time he reached his son was less than a minute; i. e., he did not delay. When he reached the scene of the accident he saw his son lying face down on the ground with his head near the curb. Dr. Madalin then turned his son over and discovered that he was bleeding profusely from a torn artery,

that his lip was cut, that his face was covered with blood, and that he had other injuries including bruises. He gave his opinion that his son was unconscious at this time. The evidence is also clear that Dr. Madalin was Robert's father. Thus, the three part requirement stated in *Landreth v. Reed*, supra, is met.

As to the other considerations concerning the foreseeability to the defendants that Dr. Madalin would contemporaneously perceive the accident, we note the discussion in a footnote to *D'Ambra v. United States*, supra at 820. There the Court cited a quotation from H. Smith, Relations of Emotions to Injury and Disease: Legal Liability for Psychic Stimuli, 30 Va.L.Rev. 193, 239 n. 152 (1943–44) where he stated:

" 'If D's negligence injures a child of any age in his own yard or house, the likelihood that relatives may witness the episode would seem to be a foreseeable risk.' "

So it was here that Robert was fatally injured while playing in front of his house on a Saturday during the daylight hours in a residential neighborhood. We find no difficulty in finding that a reasonably prudent person would foresee the presence of a parent under these circumstances. Moreover, we have no difficulty with the fact that Dr. Madalin did not visually witness the accident, but rather heard it and then witnessed the results soon thereafter. His perception of the accident was still contemporaneous. See *Krouse v. Graham*, 19 Cal.3d 59, 137 Cal.Rptr. 863, 562 P.2d 1022 (1977), *Arauz v. Gerhardt*, supra.

Appellees admitted during oral argument, and we agree, that Mrs. Madalin who was at a nearby shopping center at the time of the accident, does not meet the requirements set forth in *Landreth v. Reed*, supra, and that her $25,000.00 award for mental anguish should be remitted. Point 2 is overruled as to Dr. Madalin and sustained as to Mrs. Madalin.

Appellants' points 12 through 15 (as they apply to Dr. Madalin) contend that the trial court erred in allowing Dr. Madalin to testify concerning his mental anguish and that the evidence is legally and factually insufficient to support the jury's verdict of $20,-000.00 for Dr. Madalin's mental anguish. We disagree.

First, the law is clear that a party may testify as to his own mental suffering if that is an issue in the case. *Missouri K. & T. Ry. Co. of Texas v. Miller*, 25 Tex.Civ. App. 460, 61 S.W. 978 (1901, writ ref'd); 23 Tex.Jur.2d Evidence § 499 (1961).

Second, we find the evidence was sufficient to support a $20,000.00 award for Dr. Madalin's suffering. Dr. Madalin testified that he is a specialist in thoracic and cardiovascular surgery, who had practiced medicine in Corpus Christi since 1960, and that he had been chief of staff at two Corpus Christi hospitals in 1974 and 1975. He explained that immediately after the accident, he suffered from depression and started taking certain types of medication to sleep and control his nerves, because "it was just unbearable" without them. He then stated that in his medical opinion depression is a physical injury which causes changes in the brain cells. Further, he stated that his capacity for work was reduced by 50% the first year after the accident, 30% after the second year, 20% after the third year and at the time of trial probably 10%.

Dr. Leroy Boriak, a physician in family practice, who testified that he daily dealt with depression, explained that he arrived at the scene of the accident before the ambulance did. He said that Dr. Madalin suffered from depression, that people can die from depression, that one just does not function at full capacity when he is depressed. He also stated at the time of trial, nearly three and a half years after the accident, that Dr. Madalin was still depressed.

Mental anguish, like pain and suffering, is difficult to quantify and any determination of an award should be left to the intelligence and conscience of the jury. After reviewing the evidence, we find the evidence legally and factually sufficient to

justify the $20,000.00 award for Dr. Madalin's mental anguish. Appellants' points 12 through 15 are overruled insofar as they relate to the award to Dr. Madalin.

Appellants' point 3 contends that the trial court erred in permitting Dr. Madalin to testify about the values of the contributions his son might have made to him in his practice of medicine.

As appellants admit in their brief, the evidence showed that Robert Madalin was a bright, intelligent young man who was interested in science, wanted to go to medical school and showed an interest in practicing medicine with his father. The record also reflected that Robert had an I.Q. of 125 or 130, and that, according to his father, he was smart enough to be a doctor.

Appellants' specific complaint is that over objection, Dr. Madalin was allowed to testify that "If [Robert] were a referring doctor that referred every single case that he had to me, I would estimate his value would be anywhere from $20,000.00 to $30,000.00 a year, even possible more if he's in a busy practice." Appellants complain that this testimony should not have been allowed because there were no facts given upon which to base Dr. Madalin's opinion. The record is clear, though, that Dr. Madalin's entire medical practice was based upon referrals from other doctors. We find no abuse of discretion in the trial court's allowing Dr. Madalin to give evidence concerning the value of referrals. See *State v. Evans*, 340 S.W.2d 99, 101 (Tex.Civ.App.—Waco 1960, writ ref'd n. r. e.); 2 McCormick and Ray, Texas Law of Evidence § 1422 (2nd ed. 1956). Appellants' point 3 is overruled.

Appellants' points 4 through 7 and part of 21 assert that the jury's award of $35,-000.00 for loss of future pecuniary benefits from the deceased is excessive in that there is legally and factually insufficient evidence to support such an award.

"In a wrongful death case the amount of damages to which the beneficiaries are entitled is primarily and peculiarly within the province of the jury, and in the absence of a showing that passion, prejudice or other improper matters influenced the jury, the amount assessed by them will not be set aside as excessive." *J. A. Robinson Sons, Inc. v. Ellis*, 412 S.W.2d 728, 744 (Tex. Civ.App.—Amarillo 1967, writ ref'd n. r. e.). But, where the amount is so excessive as to shock a sense of justice in the minds of the appellate court, the verdict will be found to be excessive. *Main Bank & Trust v. York*, 498 S.W.2d 953, 955 (Tex.Civ.App.—San Antonio 1973, writ ref'd n. r. e.).

In determining the amount to be awarded, the jury may consider the rapid devaluation of the value of the dollar. *Roberts v. Tatum*, 575 S.W.2d 138 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.). Also, in a case such as this, the reviewing court must review all of the evidence, and view it in the light most favorable to the award. *In Re Kings Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Wharf Cat, Inc. v. Cole*, 567 S.W.2d 228 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.); *Bell Aerospace Corporation v. Anderson*, 478 S.W.2d 191, 201 (Tex.Civ.App.—El Paso 1972, writ ref'd n. r. e.).

Texas courts have historically followed two approaches in determining excessiveness in damages; namely, looking to precedent from other cases and looking to the facts and circumstances of each case. *Halliburton Company v. Olivas*, 517 S.W.2d 349 (Tex.Civ.App.—El Paso 1974, no writ). In *Best Steel Bldgs., Inc. v. Hardin*, 553 S.W.2d 122 (Tex.Civ.App.—Tyler 1977, writ ref'd n. r. e.), the Court cited the *Halliburton* case and the two methods above mentioned. The court explained that the practice of comparing awards in other cases was unsatisfactory because of the factual differences in the cases and also because of the continued erosion of the value of the dollar. It preferred the "particular case" approach "inadequate as it is." In light of the rapid inflation being experienced today, we also tend to follow the *Best* decision, but will not ignore the instructive value of damage awards in other cases.

Appellants cite several cases in which the plaintiffs received awards for the death of a child less than the $35,000.00 herein. In

addition to the many cases cited in appellants' brief, we have inspected authority out of Texas and have found awards in excess of the one in the case before us. See Annot., 49 A.L.R.3d § 4 (1973). In light of inflation, we cannot say that the purchasing power the plaintiffs obtained in the Texas cases cited by appellants was less than the purchasing power of the $35,000.00 award in this case. But, as stated earlier, we will consider these cases as merely instructive and look with greater emphasis on the particular facts of this case.

Placing a present value on the potential earning capacity of any individual is uncertain at best. *Roth v. Law*, 579 S.W.2d 949, 958 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n. r. e.). Where an estimate has to be made concerning the future earning capacity of a minor, the problem is magnified. See Stein, Personal Injury and Death Actions § 254 (1972). Generally, where a child has never earned any money, nor shown any particular abilities or aptitudes, the jury must determine the value of the child's lost earnings based upon their common knowledge and their sense of justice. *Roth v. Law*, supra, at 958.

In this case there is some evidence of Robert's interests and aptitudes and their potential value which we fully realize is uncertain and possibly optimistic. There is also extensive evidence of the child's superior mental abilities and scholastic aptitude and the fact that he loved his parents and expressed his kindness and affection generously. He also helped work in the yard and garden. The jury could infer from all of this that in all reasonable probability the deceased child might have been of considerable financial value to Dr. Madalin's practice or that he would have helped support his parents in their advanced years or in the event of their disability or economic hardship. Compare *Landreth v. Reed*, supra; *Borak v. Bridge*, 524 S.W.2d 773 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.). We cannot say that the award is excessive or that the evidence is legally or factually insufficient to support the verdict. Appellants' points 4 through 7 and part of 21 are overruled.

Appellants' points 8 through 11 and the remainder of 21 complain that the trial court erred in permitting Dr. Madalin to testify that his child was conscious after the impact of the collision. These points also submit that the evidence is legally and factually insufficient to support an award of $25,000.00 for conscious pain and suffering and mental anguish and that this award is excessive.

In addition to the previous evidence concerning this matter, the following evidence pertains to this point. Only two people testified at trial about the events and circumstances immediately before and after the accident. The first witness, Glenn Stella, was in his automobile on the frontage road following the vehicle which struck the child. The evidence indicates that the child was playing with some friends on or near the curb of the road. He explained that as the appellants' vehicle approached the boy, Robert looked up in the air, saw the vehicle headed toward him and threw up an arm as if in self-defense. Stella then saw the vehicle hit the child and knock him some distance away to the grassy area between the sidewalk and the access road. When asked whether he saw or heard anything else, he replied that he did not because the windows on his car were rolled up. When asked whether Robert was rendered unconscious immediately he replied, "That is correct." He also stated that he never heard Robert say anything.

Dr. Madalin was the only other person who testified about the accident. Besides the testimony mentioned by us earlier, Dr. Madalin stated that based upon what he saw at the scene and based upon his medical experience, the cause of his son's unconsciousness was his head hitting the curb. He then stated that as far as he could tell, his son's head injury occurred when his head hit the curb after being thrown about 60 to 80 feet after impact. Based upon all this, he testified that it was his opinion that his son was conscious when he screamed, probably as he was being thrown through the air by the impact of the vehicle. Dr.

Madalin then gave his opinion that his son experienced pain during the time he was tossed through the air. He also gave an opinion based upon his medical experience, that his son experienced mental anguish before his death. Dr. Madalin then stated that his son experienced brain death while he and his son were riding to the hospital in an ambulance.

Appellants' point 8 complains that Dr. Madalin should not have been allowed to testify that Robert was conscious after impact because he did not see the accident, because Robert was unconscious when he arrived at the collision scene and because Glenn Stella had already testified that Robert was unconscious immediately after the accident.

■ The essence of appellants' challenge is that because Dr. Madalin was in the back yard at the time of the impact he cannot give an opinion of consciousness. Though Dr. Madalin did not see the actual impact, he heard a scream, heard a thud and then observed the scene of the accident immediately after it occurred. We do not find it too speculative to assume that Dr. Madalin could have inspected the curb, the surroundings, and Robert's physical condition and reach a conclusion about what probably caused his head injury. We realize it is quite possible that Robert was unconscious from the time of impact as Glenn Stella testified. However, Glenn Stella's non-medical opinion about unconsciousness is not conclusive on this Court. See *Texas Consolidated Transportation Co. v. Eubanks*, 340 S.W.2d 830, 937 (Tex.Civ. App.—Waco 1960, writ ref'd n. r. e.). We think that considering all the circumstances, the trial court did not err by permitting Dr. Madalin to give his opinion as to consciousness based upon what he heard, what he saw, and his medical experience. It would then be the jury's province to decide the weight to be given Dr. Madalin's opinion.

■ About the questions of the excessiveness of the award for pain and suffering and mental anguish and the sufficiency of the evidence to support the award, we first make a few observations. The existence of pain and suffering can be established by circumstantial evidence. *Landreth v. Reed*, supra; *Canales v. Bank of California*, 316 S.W.2d 314 (Tex.Civ.App.—Eastland 1958, writ ref'd n. r. e.). Moreover, it is presumed that pain and suffering and mental anguish naturally accompany a severe physical injury. *Qualls v. Miller*, 414 S.W.2d 746, 748 (Tex.Civ.App.—Texarkana 1967, writ dism'd); *Canales v. Bank of California*, supra; *Griffith v. Casteel*, 313 S.W.2d 149 (Tex.Civ.App.—Houston 1958, writ ref'd n. r. e.). Because of its nature, the existence of pain and suffering and mental anguish is not capable of being accurately determined and accordingly there is no fixed rule or standard for its measurement. Thus, the degree must be left to the sound judgment of the jury, subject only to correction by the courts for abuse and excessiveness. *Landreth v. Reed*, supra, at 492. We hold there was legally and factually sufficient evidence that Robert was conscious after the impact to raise a jury issue as to whether he experienced the pain and mental anguish presumed to accompany a severe injury.

■ About the excessiveness of the award, we have reviewed Annot., 49 A.L. R.3d 934 (1973), *Landreth v. Reed*, supra, (which awarded $30,000.00 for a fourteen month old child's pain and suffering while drowning) and many of the cases cited in appellants' brief that restricted recovery for pain and suffering to amounts below the $25,000.00 awarded herein. In light of inflation, however, we cannot say that the trial court erred in allowing the award as to pain and suffering and mental anguish to stand. Appellants' points 8 through 11 and 21 are overruled.

■ Appellants' points 16 through 20 challenge the legal and factual sufficiency of the evidence to support a $5,000.00 award for loss of earnings, and the admissibility of Dr. Madalin's testimony concerning his loss of earnings. Appellants, however, have not briefed these points. Having found no fundamental error, we consider the points as waived. *Cleaver v. Dresser Industries*, 570

S.W.2d 479, 482 (Tex.Civ.App.—Tyler 1978, writ ref'd n. r. e.). Even so, we have reviewed the evidence and find it legally and factually sufficient to support the $5,000.00 award. Appellants' points 16 through 20 are overruled.

Appellees bring one cross-point in which they allege the trial court erred in granting appellants' special exception which deleted their pleadings seeking exemplary damages and in failing to grant a motion to reinstate their cause for exemplary damages. We disagree.

As we have mentioned earlier, the Madalins brought this suit in their individual and representative capacities. Among other things, they sought exemplary damages for Robert's death. Based upon Tex.Const. art. XVI, § 26, the appellants filed special exceptions to these allegations. The exceptions were sustained.

Tex.Const. art. XVI, § 26, provides:

"Every person, corporation, or company, that may commit a homicide, through wilful act, or omission, or gross neglect, shall be responsible, in exemplary damages, to the surviving husband, widow, heirs of his or her body, or such of them as there may be, without regard to any criminal proceeding that may or may not be had in relation to the homicide."

As observed by the court in *Smith v. Farrington*, 8 S.W.2d 317 (Tex.Civ.App.—Amarillo 1928, no writ):

"By this article of the constitution [article 16 § 26] the recovery of exemplary damages for death is limited to the classes of persons therein specified, and it is held that a parent cannot recover exemplary damages for the death of a child." Id. at 317.

See also *Scoggins v. Southwestern Electric Service Company*, 434 S.W.2d 376 (Tex.Civ. App.—Tyler 1968, writ ref'd n. r. e.); *Fleming Oil Co. v. Watts*, 193 S.W.2d 979, 981 (Tex.Civ.App.—Texarkana 1946, writ ref'd n. r. e.).

■ Appellants contend that this constitutional rule only applies to suits brought for wrongful death under the Texas Wrongful Death Act, Article 4671, supra, and that it does not apply to the Texas Survival Statute, Article 5525, supra. In short, appellees argue that they are suing on behalf of Robert's estate, which is tantamount to Robert's bringing the suit himself, and his estate is, therefore, not limited by the Constitution.

■ In *Winnt v. International & G. N. Ry. Co.*, 74 Tex. 32, 11 S.W. 907, 908 (1889), the Court stated:

"[T]he right to maintain an action for the recovery of exemplary damages for the death of a person caused by the wilful act, omission, or gross neglect of a corporation or company, etc. is confined to the class of persons who, by the terms of the constitution, are designated as entitled to maintain such action; namely, the surviving husband or wife, or heirs of the body, of the deceased, and not to the parent."

Compare *Scoggins v. Southwestern Electric Service Company*, supra, at 379. The Constitution does not provide that the decedent's estate is exempt from its provisions or that the estate may bring such an action. To hold that the estate can sue for exemplary damages while parents may not, would be tantamount to enlarging the class of persons who can recover exemplary damages for a child's death. See e. g. Tex.Prob. Code Ann. § 38 (1956). In order to maintain an action for exemplary damages on behalf of a decedent, the parties must show by their pleadings that they come within the class of persons designated in the Constitution. See *Winnt v. International & G. N. Ry. Co.*, supra, 11 S.W. at 908.

It is evident from Dr. and Mrs. Madalin's pleadings herein that they do not qualify under the constitutional requirements; therefore, the trial court properly struck their pleadings seeking exemplary damages. Appellees' cross-point is overruled.

In accordance with our sustaining appellants' points concerning the $25,000.00 award to Mrs. Madalin for her mental anguish, we order that a remittitur of $25,-000.00 be filed in this Court by the appellees within ten days from the announcement of this decision, whereupon this Court will reform the judgment of the trial court by the amount of the remittitur; otherwise, the

judgment of the trial court will be reversed and the cause remanded for a new trial.

The judgment of the trial court is affirmed on condition of remittitur.

## SUPPLEMENTAL OPINION ON THE FILING OF REMITTITUR

This Court has suggested that appellee Sally Madalin remit the sum of $25,000.00 out of the amount awarded to her as set forth in the original opinion. The appellee has filed a remittitur in the amount suggested by this Court.

Therefore, in accordance with the opinion of this Court heretofore announced, the judgment of the trial court is reformed to the extent of the amount hereby remitted by the appellee so that the amount of judgment against the appellants is reduced to the sum of $89,033.52.

The judgment of the trial court as herein reformed is hereby affirmed.