**Robert NEWMAN, Appellant,**

v.

**MINYARD FOOD STORES, INC., Appellee.**

**No. 20281.**

Court of Civil Appeals of Texas, Dallas.

May 22, 1980.

Rehearing Denied July 23, 1980.

John H. Cochran, Dallas, for appellant.

Patrick F. McGowan, E. Thomas Bishop, Strasburger & Price, Dallas, for appellee.

Before GUITTARD, C. J., and AKIN and STOREY, JJ.

STOREY, Justice.

Plaintiff, a witness to his wife's slip and fall accident, sued to recover damages for his own mental anguish and for loss of consortium resulting from his wife's injuries. Summary judgment was granted defendant on each element of damage. The trial court ruled as a matter of law that there could be no recovery for mental anguish in the absence of some definable

physical injury; and that except for an intentional invasion no cause of action for loss of consortium existed in Texas at the time of the occurrence in question. We disagree with the trial court's ruling on each ground and reverse and remand for trial on the merits.

The facts are not in dispute. Plaintiff and his wife were shopping in defendant's grocery store on Sunday afternoon when the wife slipped on a bottle cap and fell to the floor. She immediately exhibited severe pain, commenced vomiting, and, as it was later revealed, suffered internal hemorrhage and injury to her back. While plaintiff received no physical contact, he observed the fall and his wife's immediate reactions. The wife settled her claims and fully released defendant, but plaintiff was not a party to the release. Thereafter, plaintiff filed this suit seeking recovery for his mental anguish. He contends the trial court erred in ruling that no action lies for mental anguish unless accompanied by physical impact or bodily injury and cites *Bedgood v. Madalin*, 589 S.W.2d 797 (Tex. Civ.App.—Corpus Christi 1979, writ granted) as authority. We agree with plaintiff's contention.

■ *Bedgood* presented the question as to whether a bystander parent could recover damages for mental anguish when he heard the impact of an automobile striking his son and then observed his son's injuries at the scene of the accident shortly before the son died. In allowing recovery to the parent for his mental anguish, the court followed *Landreth v. Reed*, 570 S.W.2d 486 (Tex.Civ.App.—Texarkana 1978, no writ) which had concluded that Texas would follow the lead set by *Dillon v. Legg*, 68 Cal.2d 728, 441 P.2d 912, 69 Cal.Rptr. 72 (1968), and allow a bystander's recovery where a person's negligence causes manifested mental anguish which was foreseeable by the negligent party. We are unable to distin-

guish the facts of this case from *Bedgood*. If plaintiff is able to prove that an emotional injury occurred, the undisputed facts could support a finding of casual relation, and we are unable to hold, as a matter of law, that defendant could not reasonably have foreseen the consequences of its acts. *See Kaufman v. Miller*, 414 S.W.2d 164, 167 (Tex.1967). Rather, this is a fact question which should be submitted to the jury.

Defendant urges that because the so-called bystander doctrine is a departure from the long standing rule in Texas that mental suffering is not ground for recovery in negligence cases unless accompanied by physical injury, there should be strict limitations placed upon it. Defendant suggests that one guideline, in addition to the foreseeability factors set forth in *Landreth v. Reed*, 570 S.W.2d at 489, should be the severity of the accident or injury witnessed.[1] It attempts to distinguish this case on that ground. While we agree with defendant that abuses could proliferate from the application of the doctrine, we cannot agree that severity could be a viable legal test. Rather, this should be left as one of the factors to be taken into account by the trier of fact in finding emotional injury or damage, and, where the facts warrant, the courts may guard against abuses and excesses by remittitur.

Furthermore, we cannot agree with defendant that this case presents, for the first time, a departure from the long standing rule in Texas concerning a cause of action asserted by an "uninjured bystander." We note that the supreme court has granted writ of error in *Bedgood*. However, in *Covington v. Estate of Foster*, 584 S.W.2d 726 (Tex.Civ.App.—Waco 1979, writ ref'd n. r. e.), the court of civil appeals reversed on the sole point that the trial court erred in excluding plaintiffs' pleadings, evidence and argument with respect to the mental an-

1. While it appears that they more clearly relate to causation, the court in *Landreth v. Reed* set out relevant factors for determining foreseeability. These are: (1) whether the plaintiff was located near the scene of the accident; (2) whether the shock resulted from a direct emotional impact upon the plaintiff of a contemporaneous perception of the accident as distinguished from learning of the accident from others after its occurrence; and (3) whether the plaintiff and the victim were closely related.

guish and physical manifestations thereof suffered by plaintiffs as a result of the injuries to their daughter. *Id.* at 727. In *Kaufman v. Miller*, 414 S.W.2d 164 (Tex. 1967), the court treated the plaintiff truck driver as an "uninjured bystander" because his initial fright and resulting emotional trauma arose out of a fear of injury to another party rather than to himself. There the court noted (1) that the courts have generally denied recovery to one who suffers injury from mental shock as a result of an injury or threatened injury to a third person and (2) that recovery is generally denied when the plaintiff is unusually or peculiarly susceptible to emotional trauma and that fact is unknown to the negligent tort-feasor. The court then concluded:

> We need not approve either of the limitations discussed as an arbitrary limitation on the right of recovery for injuries resulting from emotional shock caused by negligent conduct. Both limitations are present in this case. There are also other factors which when combined with the limitations discussed impel a conclusion as a matter of law that the defendant could not reasonably have foreseen the injuries suffered by the plaintiff as a natural and probable consequence of her negligent conduct.

*Id.* at 170. The court then concluded:

> We recognize that this field of law is in a developing process, as is the field of psychiatry, and *we would be reluctant to hold at this time that any one of the enumerated factors would of and by itself be sufficient to require a judgment denying liability.* We are satisfied, however, that public policy is better served by denying liability when all are combined. [Emphasis added.]

*Id.* at 171. The court held as a matter of law that defendant could not reasonably have foreseen the consequences of her act, but implicit in its holding is a recognition of a cause of action by an uninjured bystander for damages for mental anguish. The same holding is also implicit in *Gulf, Colorado & Sante Fe Railway v. Hayter*, 93 Tex. 239, 54 S.W. 944 (1900) and *Hill v. Kimball*, 76 Tex. 210, 13 S.W. 59 (1890). See also the discus-

sion of *injury* in *Bailey v. American General Insurance Co.*, 154 Tex. 430, 279 S.W.2d 315 (1955).

We also do not agree with defendant's contention that plaintiff may not assert a cause of action for loss of consortium. While our courts have long held to the contrary, the supreme court in *Whittlesey v. Miller*, 572 S.W.2d 665 (Tex.1978), expressly overruled that line of cases and held that either spouse has a cause of action for loss of consortium that might arise as a result of an injury caused to the other spouse by a third-party tortfeasor's negligence. Defendant contends that this decision does not apply because the injury to plaintiff's wife occurred about ten months before the *Whittlesey* opinion, and the court there stated:

> As to the retroactive application of our holding that either spouse has a cause of action for the negligent impairment of consortium where the other spouse has been negligently injured by a third party, we declare, as a matter of sound administration and fairness, that this holding shall be applicable only in the present case and those actions arising after the effective date of this decision.

The above language is not central to the court's holding in *Whittlesey* but rather is a statement of the court's intention with respect to cases not before it. Our problem in applying *stare decisis* to *Whittlesey* is whether to follow the court's actual holding on the facts before the court or its declaration of policy with respect to cases not before it. Our understanding of *stare decisis* is that we are bound by actual holdings rather than dicta. *State v. Valmont Plantations*, 346 S.W.2d 853, 878–882 (Tex.Civ. App.—San Antonio 1961), aff'd, 355 S.W.2d 502 (Tex.1962). *See also Fort Worth & D. C. Railway Co. v. Roberts*, 98 Tex. 42, 81 S.W. 25 (1904), where the supreme court had before it one of its prior decisions in which, after deciding the case at hand, the court had announced a different rule to govern future cases. Chief Justice Gaines, speaking for the court in *Roberts*, stated:

[We] are of the opinion that the declaration of the court as to what its decision in futuro shall be should not be treated as having the force and effect of a regularly formulated and properly promulgated rule of practice. What the Supreme Court decides should be with us the highest evidence of what the law is upon the point, and should be followed, unless for very cogent reasons it is believed to be erroneous; but, as we think, no such weight should be given to its declarations as to what it will decide. We think that we should follow the decision, rather than the announcement of a rule as to future cases . . .

*Id.* at 26.

 We recognize that in defining adherence to precedent, the supreme court may make its own choice between prospective or retrospective application of its decisions without violating constitutional restraints. *See Great Northern Railway Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 53 S.Ct. 7, 77 L.Ed. 508 (1932) (old rule followed in the case at hand but court declared its intention to adopt a different rule in future cases). However, the court in *Whittlesey* applied the new ruling to the case at hand but made its decision prospective to cases subsequently arising with respect to all other litigants. Because the facts in *Whittlesey* arose before the opinion, this results in the application of different rules of law to litigants in identical circumstances for no better reason than that one litigant was able to obtain an earlier decision by the supreme court. Our difficulty is illustrated by the identical policy adopted by the supreme court of Illinois.

In *Molitor v. Kaneland Community Unit District No. 302,* 18 Ill.2d 11, 163 N.E.2d 89 (1959), the Illinois supreme court made prospective its decision abolishing the immunity of a school district from tort liability except as to the plaintiff then before it. Relying upon this declaration of policy, the intermediate appellate court in a subsequent appeal affirmed a trial court's order which had dismissed the action of several other plaintiffs who were injured in the same bus accident as Molitor. On appeal to the Illinois supreme court, the intermediate court was reversed and the subsequent plaintiffs' causes of action were reinstated. *Molitor v. Kaneland Community Unit District No. 302,* 182 N.E.2d 145 (1962). While the Illinois supreme court had impeccable reasons for its reversal, the fact remains that the intermediate court was found to be in error in following the prior declaration of its supreme court rather than its holding.

 Our supreme court has stated its reasons for giving retroactive application to *Whittlesey* to be in the interest of sound administration and fairness but these reasons give no specific direction to a lower court. In the absence of specific direction to the contrary, we deem it our duty as an intermediate appellate court to adhere to the law as it is announced by our supreme court. We therefore hold in this case as the supreme court held in *Whittlesey* that either spouse has a cause of action for loss of consortium resulting from injury to the other spouse from negligence of a third party.

Reversed and remanded.