Grady H. VAUGHN, III, et al., Appellants,

v.

E. H. GUNTER et al., Appellees.

No. 17488.

Court of Civil Appeals of Texas, Dallas.

July 24, 1970.

Rehearing Denied Oct. 9, 1970.

**524**

Ralph B. Shank, Shank, Irwin, Conant & Williamson, Dallas, for appellants.

Jack Pew, Jackson, Walker, Winstead, Cantwell & Miller, Orrin Miller, Guardian Ad Litem, Dallas, for appellees.

BATEMAN, Justice.

We have here the task of construing two *inter vivos* trusts established in 1952 by G. H. Vaughn and wife, Dixie, from their community property. The precise question is whether Gary William Vaughn, the adopted child of G. H. Vaughn, Jr., is entitled to share in the remainder-class gift to "children" within the meaning of that term as used in the trust instruments.

The two trusts in question are practically identical, the settlor of one being G. H. Vaughn and the settlor of the other being his wife, Dixie. The life beneficiary was their son, G. H. Vaughn, Jr. The crucial portion of each trust instrument is Section II, Subsection (d), as follows:

"Upon the death of Settlor's son, G. H. VAUGHN, JR., this Trust (subject to the postponements hereinafter specified) shall terminate and all of the assets and property comprising the corpus of the same shall be delivered and distributed in fee simple and free of trust in equal shares unto such of the children of G. H. VAUGHN, JR. as shall then be living and the descendants of any child of his dying before such time, per stirpes and not per capita, so that such descendants collectively shall take such share only as their parent would have taken if living; * * *."

G. H. Vaughn, Jr. and his wife, Dorothy, had a son named G. H. Vaughn, III, who was born to their marriage on March 14, 1942 and was ten years old when the trusts were established. G. H. Vaughn, the father of G. H. Vaughn, Jr., died on November 8, 1955; and on November 26, 1956, approximately one year later G. H. Vaughn, Jr. and wife, Dorothy, lawfully adopted Gary William Vaughn, a baby about five months old. G. H. Vaughn, Jr., died on August 9, 1967 leaving surviving him the said G. H. Vaughn, III and the said Gary William Vaughn. This contest is between G. H. Vaughn, III and Gary William Vaughn, the former claiming

that he is the only member of the remainder-class contemplated by the phrase, "children of G. H. VAUGHN, JR." and hence entitled to the entire corpus of the trusts, while Gary William Vaughn contends that as the adopted son of G. H. Vaughn, Jr., he is also a member of that class and entitled to half of the corpus. This suit was filed by E. H. Gunter et al, the trustees of both trusts, for construction of the above quoted portion of the trusts and for declaratory judgment.

At the conclusion of a nonjury trial the trial court decreed that Gary William Vaughn shall be regarded as a child of G. H. Vaughn, Jr. and his descendants as descendants of a child of G. H. Vaughn, Jr., and that he should be entitled to an equal share of the corpus of both trusts upon obtaining the requisite age. G. H. Vaughn, III, also known as Grady H. Vaughn, III, appeals. We affirm this part of the judgment.

Appellant's first sixteen points, numbered I–A through VIII–B, all complain in varying phraseology of the trial court's finding and judgment that Gary William Vaughn was one "of the children of G. H. Vaughn, Jr." within the meaning of that term as used in the two trust instruments. Appellant relies heavily on the opinion of the Supreme Court in Vaughn v. Vaughn, 161 Tex. 104, 337 S.W.2d 793 (1960), and strongly urges that the principles enunciated there should control the disposition of this appeal. In that case the Supreme Court was construing the will of G. H. Vaughn, dated April 16, 1954. After establishing a testamentary trust, the will provided that new trusts should be created "if, as, and when any child of my son, G. H. Vaughn, Jr., is born after ᵇmy death * * *." Gary William Vaughn contended that by virtue of his adoption he was included within the class on an equality with his stepbrother, G. H. Vaughn, III, but the Supreme Court held otherwise, saying that the will contained language indicating that the tes-

tator intended that "natural children only of his sons were to be included * * *."

The language in the will, "when any child of my son, G. H. Vaughn, Jr., is *born* after my death," was said to show "that G. H. Vaughn did not intend that a new, separate, and distinct trust should be created for the benefit of the after adopted child, Gary William Vaughn." It was said that the "use of the words 'born after my death' renders it most improbable that he was referring to children born to strangers," and that the language was "conclusive" that he meant to include as members of the class only those children who were actually *born* of his son, G. H. Vaughn, Jr., and that this "conclusion is made inescapable in view of the further provision in the will directing the trustees to *immediately after such child is born* create the new trust." (Italics ours.)

We see no such language in the trusts here under examination. Nor do we find any evidence in the record to indicate that G. H. Vaughn and his wife Dixie intended to include as remaindermen only children actually born to their son, G. H. Vaughn, Jr., to the exclusion of adopted children.

As pointed out in Cutrer v. Cutrer, 162 Tex. 166, 345 S.W.2d 513, 515 (1961), in jurisdictions where the adoption statutes do not require a different approach the general rule is that an adopted child is not entitled to property conveyed or devised to the "children" of the adoptive parent unless the contrary is indicated by additional language or circumstances; and this rule was generally recognized in Texas for many years. Murphy v. Slaton, 154 Tex. 35, 273 S.W.2d 588 (1954); Cochran v. Cochran, 43 Tex.Civ.App. 259, 95 S.W. 731 (Galveston 1906, no writ). This was said to be due to the fact that in early days no legal method for the adoption of children existed, leaving the word "children" to be limited to the issue of the body of the designated parent.

Since then, however, our adoption statutes have undergone numerous changes. The early laws were concerned primarily with rights of inheritance. Beginning with the 1931 statute, however, there has evolved an obvious purpose on the part of the Legislature to improve the status of adopted children and to give them a standing, so far as the law is concerned, equal to that of naturally born children. In 1931 the existing statute was repealed in its entirety and a totally new statute enacted which provided that a child adopted in accordance with its provisions should "thereafter be deemed and held to be, for every purpose, the child of its parent or parents by adoption as fully as though born of them in lawful wedlock." Acts 1931, 42nd Leg., p. 300, ch. 177, § 9. A portion of this statute was held to be invalid because of a defective caption, Eck v. Eck, 145 S.W.2d 231 (Tex.Civ.App., Austin 1940, writ dism'd, judgmt. cor.); Hoch v. Hoch, 140 Tex. 475, 168 S.W.2d 638 (1943); and it was held in Cutrer v. Cutrer, supra, that the 1931 statute did not *require* that an adopted child be regarded as a natural child of the adopting parent for the purpose of construing instruments executed by third persons, especially when those instrument contained language indicating an intent to include only children born to the life tenant.

However, we think the public policy thus announced was drastically changed by the passage of the 1951 amendment to Art. 46a, § 9, Vernon's Ann.Civ.St., which was in effect at the time the two trusts involved here were created. Pertinent parts of the 1951 statute (Acts 1951, 52nd Leg., p. 388, ch. 249) are as follows:

"When a minor child is adopted in accordance with the provisions of this Article, all legal relationship and all rights and duties between such child and its natural parents shall cease and determine, and such child shall thereafter be deemed and held to be for every purpose the child of its parent or parents by adoption as fully as though naturally born to them in lawful wedlock. * * * Such adopted child shall be regarded as a child of the parent or parents by adoption for all other purposes as well, except that where a deed, will, or other instrument uses words clearly intended to exclude children by adoption, such adopted child shall not be included in such class."

All authorities agree that in construing such instruments the ultimate question to be decided is the intent of the settlor or testator as determined from the language of the instrument in the light of all the circumstances surrounding the signer at the time of signing. At the time these two trusts were signed the 1951 adoption statute had been in effect for more than a year. The attorney who drafted the trusts testified that he knew of the changed adoption law. The settlors must be presumed to have been aware of it, although the attorney testified that he did not discuss it with them. The statute should have made it quite clear to them that if their son should later adopt a child it would be regarded as their son's child "for all purposes" unless the trust instruments they were about to sign used "words clearly intended to exclude children by adoption." No such words were used. G. H. Vaughn, Jr. and his wife Dorothy were then 32 years of age and their son, the appellant, was ten years old. The record is silent concerning their ability or possible inability to have other children born to them.

These were some of the circumstances surrounding the settlors when the trusts were created. Another was that they had previously created two other *inter vivos* trusts in which they specifically provided benefits for children who might thereafter be adopted by their son. Other instruments previously signed by them, trusts and wills which were never probated, did not mention adopted children. So it cannot be said that the possibility that their son might adopt a child or children had not occurred to them.

Professor Bailey, in his scholarly work, "Texas Law of Wills" (10 Texas Practice, § 569, p. 349), speaking of the effect of the 1951 statute on the old rule of Murphy v. Slaton, supra, and Cochran v. Cochran, supra, says:

"Thus the intent of the testator is to govern, as before, but the basic inference to be drawn from a gift to 'children' is reversed,—adopted children are to be included in the class of beneficiaries unless the will, or other instrument, 'uses words clearly intended to exclude children by adoption.' "

In other words, whereas the rule was, prior to 1951, that an adopted child was not entitled to property conveyed or devised to the "children" of the adoptive parent unless a contrary intent was disclosed by additional language or circumstances, since the 1951 amendment the opposite is true and an intent to include adopted children is shown in the absence of language indicating an intent to exclude them. This was held to be the rule in Kentucky, under a statute quite similar to ours, in Edmands v. Tice, 324 S.W.2d 491, 494 (Ky.1959), the court saying:

"As we understand the rule, an adopted child is not to be excluded from taking under a will merely because the testator had never considered the possibility of an adoption taking place. The language of the will must be such as to show a specific intention to exclude an adopted child. Ordinarily this would require use of such language as 'natural children' or some clearly exclusive expression."

We are not unmindful of the fact that the will under consideration in Vaughn v. Vaughn, supra, was executed after the 1951 amendment, and it is our earnest hope that this opinion will not be considered as inconsistent or in conflict with the opinion of the Supreme Court in that case. We think what we have said is in harmony therewith. As heretofore stated, and as clearly set forth in the Vaughn v. Vaughn

opinion, the will contained words which were clearly intended to exclude children by adoption. Likewise, in Cutrer v. Cutrer, supra, involving trusts created while the 1931 law was in effect, it was pointed out that the words "children" and "issue" were used interchangeably and that use of the phrase "heirs of his body" also showed an intention to exclude adopted children. No such language is found in the trust instruments here construed, and we therefore feel that this opinion is entirely consistent with both of those cases.

Appellant argues also that it would be wrong to include adopted children as remaindermen because this would have the undesirable result of giving to the designated parent the power, by adopting any person he may choose, in effect to appoint the subject matter of the conveyance to such person. See Cutrer v. Cutrer, supra, which quotes a statement from the Restatement of the Law of Property (1940), § 287, to that effect. As applied to the situation of this case, however, we consider the argument too broad to be applicable. We are unwilling to say from the record before us that it was "undesirable" or "wrong" for the parents of G. H. Vaughn, Jr., to have such confidence in their grown son as to invest him with the power and right to increase the number of his "children" who would take the property at his death by adopting a baby and making it a constituent member of his family.

Article 46a, § 9, V.A.C.S., does not force this result on settlors of trusts. Parents who lack that confidence and are unwilling to invest their children with such a power of appointment can easily avoid such a result by using such restricting phrases as were used in Vaughn v. Vaughn, supra, and Cutrer v. Cutrer, supra, or by simply stating in the instrument that adopted children shall not be included.

If the settlors' intent cannot be determined by the language of the trust instruments, aided by the statute in effect

at the time the trusts were created, the resulting ambiguity made it necessary for the trial court to resolve *the fact issue* of that intent. Trinity Universal Ins. Co. v. Ponsford Brothers, 423 S.W.2d 571, 575 (Tex.1968); Ellisor v. Kennedy, 128 S.W.2d 842, 844 (Tex.Civ.App., Galveston 1939, writ ref'd). All the surrounding circumstances were before the court, and in the light thereof the court impliedly found that the settlors intended to include the adopted child in the class of remaindermen. Can we say that this finding is without support in the evidence, or that it is against the preponderance of the evidence, or that it was arbitrary or an abuse of discretion? We think not. In our opinion, the finding is entirely consistent with the above quoted language of the adoption statute, as amended in 1951. Therefore, the finding and judgment of the trial court in that respect will not be disturbed here. Appellant's points of error I–A through VIII–B are overruled.

■ The trial court had appointed Hon. Orrin Miller, a member of the Dallas bar, as guardian ad litem for the minor defendant, Gary William Vaughn, and at the conclusion of the trial, and as a part of the judgment, awarded him a fee of $10,000 for his services in representing the minor up to and including the date of judgment, taxing the fee as "a cost of court." The court also ordered that on conclusion of any appeal Mr. Miller should have an additional fee of $100 for work done on appeal, such fee also to be taxed as "a cost of court." In his Point No. IX appellant complains of the allowance of the $10,000 fee for lack of evidence and because it is excessive. This point is without merit and is overruled. There was ample evidence offered by Miller and another practicing attorney that the $10,000 fee was reasonable, and we hold this evidence to be sufficient, especially since there was no evidence to the contrary. Miller and other members of his law firm spent a total of 166 hours working on the case up to the time of trial. Moreover,

this litigation involves one-half of a trust fund which the parties stipulated to be worth in excess of two million dollars. The amount involved may properly be taken into consideration in arriving at the value of attorneys' services, Republic Nat. Life Ins. Co. v. Beard, 400 S.W.2d 853, 859 (Tex.Civ.App., San Antonio 1966, writ ref'd n. r. e.), and we cannot say that the trial court abused its discretion in allowing this fee. Point IX is overruled.

■ By his Point No. X appellant complains of the refusal of the trial court to order the plaintiffs-trustees, when paying the fee allowed the guardian ad litem, to charge it against the interest of Gary William Vaughn in the respective trust estates should he prevail. This point is without merit. In the first place, we find in the record no request by appellant or his counsel for the trial court to give such instructions to the trustees. The judgment merely taxes the fee as "a cost of court" and assesses all costs against the plaintiffs-trustees. There was no exception to that part of the judgment. If the court had seen fit to do so, it might have taxed the fee against the appellant, or ordered plaintiffs-trustees to charge the same against that interest, since Gary William Vaughn, the minor, was successful. However, this was not done, and presumably the costs will be paid by the trustees out of funds in their hands as such and with the result that they will eventually be paid equally out of the interests owned, respectively, by appellant and Gary William Vaughn. Therefore, no reversible error is presented by Point X, and it is accordingly overruled.

■ By a single cross-point the guardian ad litem for Gary William Vaughn complains of the award to him of a fee of only $100 for work done on this appeal. He says that in order to avoid the technical difficulties possibly attendant upon the trial court's retaining jurisdiction of the guardian ad litem's fee for work in the appellate courts, and the possibility that

a judgment not allowing any such fee might become final upon affirmation without any award of such a fee, the parties to the case, with the consent of the trial court, have agreed that the trial court award the nominal amount for the guardian ad litem's fee for services on appeal, and that such award should be severed from the rest of the case and reversed and remanded to the trial court for the awarding of a proper fee. This statement is not contested by appellant, and accordingly we sever the award of $100 to the guardian ad litem for services on appeal from the remainder of the case, and reverse and remand the $100 award to the trial court for further consideration. Martin v. Neel, 379 S.W.2d 422, 424 (Tex. Civ.App., Fort Worth 1964, writ ref'd).

In all other respects the judgment of the trial court is affirmed.

Affirmed in part and reversed and remanded in part.