Jesus GARZA, Appellant,

v.

BRAZOS COUNTY FEDERAL CREDIT UNION, Appellee.

No. 6135.

Court of Civil Appeals of Texas, Waco.

July 17, 1980.

C. David Stasny, Bryan, for appellant.
John L. Sandstedt, Bryan, for appellee.

HALL, Justice.

Brazos County Federal Employees Credit Union brought this suit against Jesus Garza for the recovery of the balances due on two notes executed by Garza to Credit Union. One note was an unsecured "open-ended credit voucher"; the other was a purchase-money loan secured by a 1977 Chevrolet Monte Carlo Landau automobile purchased by Garza with the loan. The automobile was repossessed and sold by Credit Union prior to the suit. Credit Union pleaded for recovery of $523.91 on the open-ended credit voucher, for recovery of a deficiency balance of $1,392.61 on the car note, and for attorney's fees for the trial of the case (provided for in the notes) in the amount of $615.00. Credit Union then prayed for $1,856.52 "as the total amount due on the two separate transactions," for $615.00 as attorney's fees, for court costs, and for post-judgment interest.

The case was tried to the court without a jury. The undisputed evidence shows that Garza defaulted on his payments on both notes. Credit Union repossessed the automobile because of the default. The balance due on the automobile loan at the time of repossession was $4,748.50. The unpaid balance on the open-ended voucher was $523.91. When the car was repossessed the engine was ruined. After the repossession, Credit Union had the engine replaced at the cost of $811.55. This repair was necessary to place the car in operable condition. The car was then sold by Credit Union at private sale for $4,500.00, without prior notice to Garza of the intended sale. Newspaper advertisements in connection with the sale cost Credit Union $57.15. Additional interest on the car note to the time of trial totaled $275.41.

After the hearing judgment was rendered awarding Credit Union $1,501.00 on the notes, $615.00 attorney's fees, postjudgment interest on both recoveries, and costs of court. Garza brought this appeal.

The trial court did not file findings of fact and conclusions of law, and the record does not show how the court calculated the award of $1,501.00 to Credit Union on both notes.

Texas adoption of the Uniform Commercial Code is set forth in chapters 1 through 9 of V.T.C.A., Bus. & C. We are concerned on this appeal with the application of § 9.504 and § 9.507 of the Code to our facts.

Under the terms of § 9.504, a secured party after default may sell or otherwise dispose of the collateral "in its then condition or following any commercially reasonable preparation or processing." The disposition of the collateral "may be by public or private proceedings," but "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." The statute also provides in its subparagraph (c) that, absent certain exceptions which do not apply to our case, "reasonable notification of the time and place of any public sale or reasonable notifi-

cation of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent."

In § 9.507(a) it is provided that if the required notice is not given to the debtor prior to disposition of the collateral, then the debtor "has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this subchapter. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten per cent of the principal amount of the debt or the time price differential plus ten per cent of the cash price."

Garza has an attorney on appeal, but he represented himself in the trial court. He conceded on the trial that Credit Union was entitled to recover the balance due on the open-ended credit voucher. In relation to the automobile loan note, he made no contention that the repairs made to the car by Credit Union and the expenditure made in connection therewith preparing the car for sale were not commercially reasonable. His sole complaint on the trial was that the sale by Credit Union was commercially unreasonable because he was not given advance notice of the sale. He stated to the court, "The only dispute I have is that I was never notified under the UCC 9–504, Subsection 3, that states that I am supposed to be given reasonable notice of sale, which I was never given. And that's all of my defense."

Both parties have stipulated in their briefs that the Chevrolet automobile in question was a "consumer good" within the meaning of the pertinent Code provisions.[1] The evidence conclusively establishes that Garza was not given notice of the intended sale by Credit Union, and that he did not at anytime execute a written waiver of notice.

1. "Goods are 'consumer goods' if they are used or bought for use primarily for personal, family or household purposes." V.T.C.A., Bus. & C. § 9.109(1).

However, there is no evidence that Garza suffered any identifiable loss caused by lack of notice of the sale.

On the trial, Credit Union contended (1) that Garza had orally waived notice of the sale, and (2) that, in any event, it was entitled to recover the full deficiency on the car note because Garza had failed to show that he was damaged by lack of notice.

Credit Union's assertion that Garza waived notice was based upon the following testimony of its president: "Q. Did Mr. Garza subsequently default on that [car] loan? A. Yes, sir, he did. Q. Did you at that time repossess the car? A. Yes, sir, we did. Q. Was the car at that time in the process of being repaired? A. Work hadn't started on it, but it was at a garage in Navasota. Q. Now, did you have occasion before repossessing the car to extend the time of payment on the note a couple of payments? A. Yes, sir, we did. Q. All right. And what, if anything, did Mr. Garza tell you when you told him that you were going to have to get some money or repossess the car? A. Mr. Garza told me that if we took it on back he wouldn't be interested in getting it back, redeeming the possession; he would be interested in buying another car. Q. Did you then repossess the car in Navasota? A. Yes, sir."

■ On appeal, Credit Union has abandoned its contention based upon no evidence of damage to Garza; and it summarizes its position in its brief as follows:

"Credit Union agrees with Mr. Garza that the collateral involved in the second loan was a consumer good and that Mr. Garza was not given notice of the sale of the vehicle after repossession. It is the position of Credit Union, however, that Mr. Garza waived his right to receive notice by his actions and that in any event his right to any offset on the automobile loan, if any, has no relation to the debt under the first loan on which suit was brought."

Credit Union argues that Garza's statement at the time of repossession that he would not be interested in redeeming the car and the circumstances under which the

statement was made support the implied finding that Garza waived notice. We cannot accept this argument. As we have set forth, above, § 9.504(c) provides that the debtor may waive the notice only in writing after default; and it is provided in the applicable provisions of § 9.501(c) that "[t]o the extent that they give rights to the debtor and impose duties on the secured party, the rules stated in [§ 9.504(c)] may not be waived or varied." Credit Union's contention that Garza waived notice is overruled.

■ There is a line of decisions from other jurisdictions which holds that in the absence of compliance with the notice requirement the secured party may not obtain a deficiency judgment. Another line holds that such failure does not bar recovery of a deficiency but creates at most a rebuttable presumption that the value of the collateral equals the amount of the debt, and places on the secured party the burden of proving that the fair market value of the goods sold was less than this amount. Cases supporting both rules are collated in *United States v. Whitehouse Plastics*, 501 F.2d 692, 695 (5th Cir.1974). In that case the federal court concluded that the second rule was the better rule and the one which Texas would adopt. The question is not before us because Garza does not assert that the want of notice to him bars recovery of a deficiency judgment by Credit Union nor that Credit Union did not establish that the fair market value of the car was less than the amount of his debt. He contends only that although he did not prove any damages resulting from Credit Union's noncompliance with the notice requirement, he is nevertheless entitled to an offset against the deficiency on the car note based upon the "minimum damage formula" in § 9.507(a) which provides that "[i]f the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten per cent of the principal amount of the debt or the time price differential plus ten per cent of the cash price." We agree. Garza also argues that the logical interpretation of the formula would be to apply its terms to the entire credit service charge and the

original debt principal rather than to the outstanding credit service and principal at the time of repossession, because under the latter "the debtor's recovery or offset would vary with the time of foreclosure and an illegal disposition of the collateral when, for instance, only the last payment of a note was in default would result in an extremely small penalty or minimum recovery—when possible harm to the debtor would be most extensive." Credit Union does not dispute Garza's interpretation of the formula, and we believe it is the proper one.

Garza's automobile loan note shows that the principal amount financed was $5,938.67, and that the finance charge was $1,363.51. Accordingly, Garza was entitled to an offset of $1,957.37 thereby defeating any right of recovery by Credit Union on the car note deficiency which was only $1,392.61.

■ The remaining questions on appeal deal with the application of Garza's offset under the record, and complaints by him about the assessments of attorney's fees and court costs. Garza's defense of lack of notice was not pleaded, but it was tried by consent. On the trial, Garza asserted this defense only against Credit Union's claimed deficiency on the car note and not affirmatively as an action for recovery of damages in any sum in excess of the amount of the deficiency. Under that state of the record, we agree with Credit Union that Garza's offset applies only against and to the extent of the deficiency on the car note and not to the balance due on the unrelated smaller note. However, it is clear under the record that the award of $615.00 for attorney's fees was based upon the work of Credit Union's attorney in prosecuting both claims. It appears equally clear that the assessment of all costs against Garza was based upon the trial court's conclusions that Credit Union was the successful party on both notes.

■ The issue of attorney's fees is a severable claim which may be remanded for a new trial. Rule 434, Vernon's Tex.Rules Civ.Proc.; *Great American Reserve Insurance Co. v. Britton*, (Tex.1966) 406 S.W.2d 901, 907. We sever it. The issue of costs is also separable under the Rule 434; and because of the uncertainty of the question, here, and the fact that it calls first for an exercise of discretion by the trial court under the provisions of Rules 131 and 141, Vernon's Tex.Rules Civ.Proc., it may be remanded for reassessment by the court.

The judgment awarding Credit Union attorney's fees is reversed, and that issue is remanded for trial. The order taxing costs against Garza is reversed, and that issue is remanded for reassessment. The deficiency judgment in favor of Credit Union on the car note is reversed, and judgment is here rendered that Credit Union shall take nothing on that claim. Credit Union is entitled to recover the undisputed balance due on the open-ended credit voucher, but in addition to the issue of attorney's fees on that claim there is also the problem of court costs which we cannot resolve under the appellate record. We therefore remand the case in its entirety to the trial court with instructions to try the issue of attorney's fees, and then render final judgment in accordance with this opinion.

Although Garza has not contested the smaller note claim, he did not bring a limited appeal and the rights of the parties under the entire judgment were brought forward for our decision. Accordingly, we assess the costs of this appeal 60% against Credit Union and 40% against Garza.