Davey Joe **DAWSON**, Appellant,

v.

Louisa **GARCIA**, et al., Appellees.

No. 05–82–01170–CV.

Court of Appeals of Texas, Dallas.

Jan. 17, 1984.

Rehearing Denied March 1, 1984.

Byron L. Falk, Newton J. Jones, Gerald R. Powell, Dallas, for appellant.

Dennis R. Croman, Irving, for appellees.

Before CARVER, SPARLING and WHITHAM, JJ.

WHITHAM, Justice.

Appellant, Davey Joe Dawson, appeals a judgment in favor of appellees, Louisa Garcia, individually, and as next friend of Alberto Garcia, a minor, and Isabel Garcia Carranza arising out of an intersectional automobile collision between vehicles driven by Dawson and Nick Garcia, the spouse and father of the Garcias. Judgments were also rendered in favor of Dawson and the passenger in his automobile, Jack Cook, against Louisa Garcia, as community administratrix of the estate of Nick Garcia; however, no appeal was perfected from those judgments. The principal issues involve (1) the right to recover any damages for bystander's mental anguish where the decedent's negligence exceeds that of the defendant; (2) the existence, or sufficiency, of evidence of contemporaneous perception of the accident; (3) abuse of discretion in awarding fees to a guardian ad litem resulting from trial court bias and prejudice against insurance companies; (4) the separate or community nature of recovery for medical expenses, lost earnings, and lost earning capacity if a spouse dies the day following the accident and (5) the right to recover pre-judgment interest on medical expenses in the absence of any pleading for interest. For the reasons that follow, we reverse and render.

*Bystander's Damages, The Evidence And The Jury Issues.*

■ In *Kaufman v. Miller*, 414 S.W.2d 164, 168 (Tex.1967), the Supreme Court tells us that "[c]ourts have been virtually unanimous in recognizing that one who suffers injury from mental shock as a result of an injury or threatened injury to a third person cannot recover damages from the negligent tortfeasor." Perhaps recognizing dicta, Dawson ignores *Kaufman's* language and tells us in his brief that "[a]lthough Texas courts now recognize a cause of action for recovery of damages due to bystander's injury, such recovery is only permitted where the shock and mental suffering result from a direct emotional impact upon the Plaintiff from a *contemporaneous perception* of the accident, as distinguished from learning of the accident from others after its occurrence," citing *Bedgood v. Madalin*, 589 S.W.2d 797 (Tex. Civ.App.—Corpus Christi 1979), *rev'd on other grounds*, 600 S.W.2d 773 (Tex.1980); *Covington v. Estate of Foster*, 584 S.W.2d 726 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.); *Landreth v. Reed*, 570 S.W.2d 486 (Tex.Civ.App.—Texarkana 1978, no writ). Although none of the cases cited are decisions of our Supreme Court, we take Dawson at his word and hold that "Texas courts now recognize a cause of action for recovery of damages due to bystander's injury." Such a cause of action for bystander's recovery in Texas appears to originate with *Landreth v. Reed*, 570 S.W.2d 486, 489 (Tex.Civ.App.—Texarkana 1978, no writ), adopting a test for foreseeability enunciated in *Dillon v. Legg*, 68 Cal.2d 728, 441 P.2d 912, 920, 69 Cal.Rptr. 72 (1968), as follows:

> We note, first, that we deal here with a case in which plaintiff suffered a shock which resulted in physical injury and we confine our ruling to that case. In determining, in such a case, whether defendant should reasonably foresee the injury to plaintiff, or, in other terminology, whether defendant owes plaintiff a duty of due care, the courts will take into account such factors as the following: (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff *from the sensory and contemporaneous observance of the accident*, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. [emphasis ours].

Nick Garcia's wife, Louisa Garcia, and his two children, Isabel Garcia Carranza and Alberto Garcia were passengers in the automobile driven by Nick Garcia. At some point after the accident occurred, Nick Garcia died. Immediately following the impact of the two vehicles, Isabel, a front seat occupant of the Garcia vehicle, fainted. Isabel did not hear her father or mother make any sounds at any time during the accident. She did not see her father after the accident and did not see him as he was placed in an ambulance and taken to the hospital. The next time Isabel saw her father was when he was removed from the ambulance and taken into the hospital. On that occasion she saw her father for only a few minutes, at which time he was unconscious and not making any sounds. Isabel could not recall observing her father in the Garcia car after the accident, nor did she observe any blood or visible injuries to her father when she saw him at the hospital. Isabel could not tell whether her father was in pain. At the time of the collision, Alberto was in the back seat of the Garcia automobile. Immediately following the impact, Alberto fainted and remained unconscious until he arrived at the hospital. He did not learn of his father's death until the day following the accident. Alberto did not observe his father in any manner at the accident scene, nor did he see his father in the ambulance or at the hospital. Alberto remembered nothing from the time of the collision until waking up at the hospital. Louisa Garcia, the wife, was seated in the front seat of the Garcia automobile when the collision

occurred. She did not recall what happened at the point of collision since she was rendered unconscious for an indefinite period of time. At no time after the collision did Louisa observe any visible injuries to Nick, and she did not see Nick after he reached the hospital.

In his first four points, Dawson contends that the trial court erred (a) in awarding damages for mental pain and suffering as a consequence of witnessing the death of Nick Garcia because the comparative negligence finding against Mr. Garcia bars any such recovery; (b) in submitting bystander's damage issues to the jury, and rendering judgment thereon, because there was no evidence, or factually insufficient evidence, that any of the Garcias contemporaneously perceived the injury to, or death of, Mr. Garcia; (c) in failing properly to instruct the jury concerning the elements of damages it may consider in bystander injury cases; and (d) in submitting a single damage issue inquiring as to the Garcias' damages for their own injuries *and for their bystanders' injuries* because the submission improperly joined recoverable and non-recoverable elements of damage.

1. *The comparative negligence:* The Garcias sought recovery against Dawson only. The jury attributed seventy-five percent (75%) of the total negligence to Nick Garcia with the remaining twenty-five percent (25%) attributed to Dawson. The trial court rendered judgment on the verdict and awarded each of the Garcias the sum of $2,000.00 for his or her own personal injuries and as damages for mental suffering experienced from having witnessed Nick Garcia's death. Dawson argues that the entire award of damages in favor of the Garcias for mental pain and anguish as a consequence of witnessing the death of Nick Garcia is improper and not allowable as a matter of law. We agree. The question of whether a person is entitled to recover any damages for bystander's mental anguish where the decedent's negligence exceeds that of the defendant is one of first impression in this state. In deciding the question we find *Dillon v. Legg*, 68 Cal.2d 728, 441 P.2d 912, 69 Cal.Rptr. 72

(1968), instructive. *Dillon* has been cited with approval in Texas. *Bedgood v. Madalin*, 600 S.W.2d 773 (Tex.1980); *Newman v. Minyard Food Stores*, 601 S.W.2d 754 (Tex.Civ.App.—Dallas 1980, no writ); *Covington v. Estate of Foster*, 584 S.W.2d 726 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.); *Landreth*, 570 S.W.2d at 489; *Dave Snelling Lincoln Mercury v. Simon*, 508 S.W.2d 923 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ).

In *Dillon* a mother asserted several actions, including one for emotional trauma she experienced from witnessing an auto-pedestrian accident in which her infant daughter (a pedestrian) was killed when struck by the defendant's vehicle. The mother sued both for wrongful death damages and for mental anguish she suffered as a bystander who witnessed the collision which killed her daughter. The vehicle driver interposed as defenses the contributory negligence of the mother, a sister who also saw the accident, and the deceased child. The trial court dismissed all causes of action for bystander's injury and the case was appealed to consider, *inter alia*, whether contributory negligence of the deceased would preclude the also-negligent defendant from liability to the bystander. The Supreme Court of California concluded that, in such a situation, the claims for bystanders' mental anguish would be barred. The court reasoned as follows:

We further note, at the outset, that defendant has interposed the defense that the contributory negligence of the … [deceased] child contributed to the accident. If any such defense is sustained and defendant found not liable for the death of the child because of the contributory negligence of the … [deceased] child, we do not believe that the mother or sister should recover for the emotional trauma which they allegedly suffered. *In the absence of the primary liability of the tort-feasor for the death of the child, we see no ground for an independent and secondary liability for claims for injuries by third parties.* The basis for such claims must be adjudi-

cated liability and fault of defendant; that liability and fault must be the foundation for the tort-feasor's duty of due care to third parties who, as a consequence of such negligence, sustain emotional trauma. [emphasis ours].

441 P.2d at 916.

■ In the present case we focus on the absence of the primary liability of the alleged tortfeasor (Dawson) for the death, as did the court in *Dillon*. TEX.REV.CIV. STAT.ANN. art. 2212a, § 1 (Vernon Supp. 1982–1983), provides in pertinent part that "[c]ontributory negligence shall not bar recovery ... if such negligence is not greater than the negligence of the person or party or persons or parties against whom recovery is sought...." It follows, therefore, that Dawson had no primary liability for the death of Nick Garcia and thus had no liability to the Garcias for bystander's mental pain and anguish. *Dillon*, 441 P.2d at 916. Dawson had no primary liability for the death of Nick Garcia because Article 2212a provides that Dawson did not. Article 2212a provides that Dawson had no primary liability because the negligence of Nick Garcia exceeds that of Dawson. We hold, therefore, that by virtue of Article 2212a a person is not entitled to recover any damages for bystander's mental pain and anguish where the decedent's negligence exceeds that of the alleged tortfeasor. Thus, we conclude that the jury's findings which attributed seventy-five percent (75%) of the total negligence in the case to Nick Garcia constitutes a complete bar to the Garcias' recovery for their bystander's injury claims, inasmuch as Nick Garcia's negligence exceeded that of Dawson, and that the trial court erred in awarding damages for mental pain and suffering as a consequence of witnessing the death of Nick Garcia.

■ 2. *The evidence of contemporaneous perception:* Dawson contends that there was no evidence, or factually insufficient evidence, that the Garcias contemporaneously perceived the injury or death of Nick Garcia. In support of his contention

Dawson summarizes the evidence and argues that:

It is abundantly clear that neither Isabel Garcia Carranza nor Alberto Garcia contemporaneously perceived either the injuries to, or death of, their father. Both Isabel and Alberto were unconscious immediately following the accident and neither saw their father nor heard any sounds from him at that time. Alberto Garcia remained unconscious until he reached the hospital and, accordingly, perceived nothing with regard to his father's condition either at the accident scene, in the ambulance, or at the hospital. Isabel Garcia Carranza was unconscious immediately following the accident and was not even present with her father when he was being transported to the hospital. When she did see him at the hospital she testified that she heard him utter no sounds and she saw no evidence of blood or visible injury to her father. She also stated that she could not tell whether he was injured or not. Louisa Garcia also testified that she was knocked unconscious as a result of the accident. She further testified that she saw no visible injuries or blood of any type to her husband.

We conclude that Dawson's argument misses the mark in that it centers on the failure of the Garcias to actually see or hear injury or death of their spouse and father. Thus, Dawson would have us conclude that the Garcias never perceived that *an accident* occurred because they never observed the injury or death of Nick Garcia with their very own eyes or heard his suffering through their very own ears. We decline to make any such conclusion. In the modern view, actual observance of the accident is not required if there is otherwise an experiential perception of it, as distinguished from a learning of it from others after its occurrence. *Landreth*, 570 S.W.2d at 490. Under the facts of the present case we conclude that the Garcias each had an experiential perception of the accident; they were injured in the very same accident and they actually lived through the very same accident. We hold,

therefore, that in the present case there was evidence which was factually sufficient to prove that the Garcias contemporaneously perceived the injury or death of Nick Garcia. The existence or sufficiency of evidence establishing the remaining two *Dillon* tests is not challenged by Dawson. Accordingly, we conclude that the evidence in the present case supported submission of a bystander's injury issue to the jury for each of the Garcias. This is not to say, however, that we approve the manner in which the issue was submitted in the present case.

■ 3. *The single damage issue:* The trial court submitted a *single* issue inquiring as to what amount of money would constitute fair and reasonable compensation to each of the Garcias for pain, suffering and disability, together with the mental anguish suffered, as a consequence of his or her own injuries, *and as a consequence of witnessing the death of Nick Garcia.* In response to each such issue, the jury answered in the amount of $2,000. Neither the Garcias nor the guardian ad litem objected to the submission of the damage issues. The parties dispute whether Dawson objected. Dawson asserts that he objected to the submission of the issues in combined form since it would be impossible to determine what portion of the jury's finding related to recoverable versus nonrecoverable items of damage. The Garcias assert that Dawson did not in his objection "point out distinctly the matter to which he objects and the grounds of his objection," as required by TEX.R.CIV.P. 274. The Garcias admit, however, that Dawson did voice the following language to the trial court in his objection: "Further, because the jury's finding as it's now arranged would be impossible to divide with regard to what portion relates to nonrecoverable items and damage and what-not." We conclude that Dawson's language in the context of this particular trial was sufficient to "point out distinctly the matter to which [Dawson] objects and the grounds of his objection." The trial court expressly overruled all of Dawson's objections to the trial court's charge. Thus, we conclude that the

error was properly preserved. *Hernandez v. Montgomery Ward & Co.,* 652 S.W.2d 923, 924 (Tex.1983).

■ Dawson argues that rendition of judgment based upon an issue which erroneously mixed recoverable and non-recoverable elements of damage was error because the entire jury finding of $2,000 for each Garcia was tainted by inclusion of the erroneous bystander's elements. We agree. We have held that the Garcias may not recover for their bystander's injury claims. Because of the combining of the two elements of damages and the jury's single response of $2,000 in damages for each Garcia, it is impossible to determine what award, if any, the jury made regarding the Garcias' bystander's claims versus what award, if any, it made for the Garcias' own physical injuries and the accompanying mental anguish from those injuries. We conclude, therefore, that such confusion with regard to jury responses to special issues warrants reversal. The case was fully developed in the trial court. No mention is made in the briefs that the case was not fully developed in the trial court. Nowhere in their brief do the Garcias suggest that uncertainty as to their right to recover bystander's damages requires a remand should they be in error. The Garcias did not join Dawson in the objection to the combined improper submission. We conclude that justice does not require a remand. The Garcias had the opportunity through objection to do it right the first time. They declined that opportunity. A remand under these circumstances would merely afford the Garcias an opportunity for another "bite at the apple." *See Owen v. Brown,* 447 S.W.2d 883, 886 (Tex.1969). We conclude, therefore, that judgment for the Garcias on these issues should be reversed and rendered.

In view of our disposition of Dawson's points one, two, and four, we need not reach Dawson's contention in his third point that the trial court erred in failing to properly instruct the jury concerning the elements of damages it may consider in bystander injury cases.

### The Fees Awarded The Guardian Ad Litem.

In his fifth point Dawson contends that the trial court abused its discretion by awarding an excessive and unreasonable fee to the guardian ad litem and in taxing all of the fees against him. Dawson argues that the trial court awarded an excessive and unreasonable fee to the guardian ad litem and taxed them against him out of bias and prejudice against insurance companies. No insurance company was a party to this action and the record contains no evidence that insurance was involved in the lawsuit.

In July of 1981, a settlement was reached of all claims. Nothing was to be paid to Dawson and Cook, $500 was to be paid to each child and $1,000 was to be paid to the widow. A joint motion to dismiss all the actions was filed by all parties which the trial court refused to grant. Instead, the trial court appointed a guardian ad litem for the minor, Alberto Garcia. Thereafter, the guardian and the trial court refused to approve the settlement, the trial court being of the opinion that the settlement amount was insufficient. The trial court expressed its displeasure with the original attorney engaged by the Garcias, and eventually pressured him into withdrawing from the case. Deleting the name of the Garcias' original attorney, we quote the trial court's remarks at hearing on motion for new trial:

[T]he court did advise Mr. _____ that the court did not consider that Mr. _____ had devoted the proper amount of time and effort in the preparation of the case, and felt that Mr. _____ should proceed immediately to prepare for trial, and Mr. _____, over a period of months, appeared to be making little or no progress in preparing for trial, and in response to Mr. _____ obvious reluctance to present the case for trial, the court did suggest to Mr. _____ that he should withdraw because the court felt that he had no faith in the lawsuit or its prosecution, and that under such circumstances he could not and would not render adequate representation of the minor, or for that matter the adult plaintiffs, and pursuant to that suggestion Mr. _____ did finally withdraw and the court then instructed Mr. Pantaze [the court selected guardian] to confer with the adult plaintiffs and to see if he could assist them in obtaining additional—or substitute counsel who could and would give adequate representation, and that was done.

At the trial court's direction, the guardian ad litem searched for a number of months and finally engaged an attorney to represent all the Garcias. At trial, the guardian ad litem, who was a licensed attorney at law, fully participated in the trial as though he were a second lawyer for the Garcias. Each of the Garcias was awarded judgment against Dawson, with Alberto Garcia to receive $2,190.50, Isabel Garcia Carranza to receive $2,082.75 and Louisa Garcia, individually, to receive $4,680.00. Dawson was awarded judgment against Louisa Garcia, as community administratrix of the estate of Nick Garcia, in the amount of $3,902.09. Cook was awarded judgment against Louisa Garcia, as community administratrix of the estate of Nick Garcia, in the amount of $14,012.26. The trial court awarded guardian ad litem fees in the amount of $7,254.00. The trial court taxed the entire guardian ad litem fee award against Dawson.

With that background, we now turn to the trial court's disdain for insurance companies. At the hearing on motion for judgment the trial court remarked:

And I might just say this for the record, that this is one of a number of personal injury cases, in fact, its a typical personal injury case, in that the defense has been conducted and paid for by major insurance companies. I'm not quite sure which one off hand, but that's perfectly clear, and I feel now, insurance companies are perennial litigants. They have got a right to assert defenses which are legitimate in court the same as anyone else. But the company which has the responsibility to pay the bills in this

case has indicated no intent whatever to stint on expenses.

This case has been tried with two defense counsels from a major law firm at the counsel table throughout. And I'm satisfied that this $7,254 which I am awarding represents only a small part of the expense incurred in this case by the carrier.

The carrier for some reason felt that they did not want to negotiate a settlement, or I'll put it this way, that they would prefer to litigate rather than pay any more than a token settlement. They were given that opportunity to litigate. If they had won, they would have considered themselves vindicated, and their vindication they would have considered worth the price.

They weren't vindicated. But they had to pay the price—I feel no hesitation whatever in awarding against them the full cost of the lawsuit because this was the carrier's attitude, that they were not concerned with costs and expenses of defense in negotiating settlement. I do not know why they should be concerned with the cost and expense of the case at this stage. And the judgment will be for $7,254, guardian ad litem's fee against the defendant, Davey Joe Dawson.

The trial court also filed, *sua sponte* and over objection, a lengthy "Supplemental Findings and Conclusions." The trial court wrote, *inter alia:*

[I]t is inherent to our system that this added potential cost [guardian fees] exists wherever anyone is drawn into litigation with a minor. This insurance carrier made the election to proceed to trial well knowing that such contingency existed.

\* \* \* \* \* \*

At no stage of the proceedings did defendant treat the case as one involving only superficial injuries or as a case of untenable liability. From a defensive standpoint, at no time did defendant exhibit any tendency to treat this action as a nuisance case and stint open the expense of presenting a defense.

The court is not aware of the precise amount to be charged by insurance—retained counsel. However, the court is satisfied that the charges will be fully commersurate (sic) with the fee awarded to the guardian ad litem.

\* \* \* \* \* \*

The court is at a loss to understand why an insurance carrier, under the circumstances reflected by this record, would have limited its settlement offer only to a fraction of the probable costs of defending the case.... Possibly, the carrier is upset because it has already paid the claims of Dawson and Cook and it now is faced with paying claims emanating from the opposing vehicle. It is sufficient for the court to point out that the carrier chose to write separate coverage for which it received separate premiums.

\* \* \* \* \* \*

This case is typical to the extent that in a large portion of the cases litigated in this court, settlement negotiations are under the control of and are at the sole expense of insurance carriers. Unless insurance carriers and their counsel negotiate freely and fairly, busy metropolitian (sic) courts have no hope of maintaining current dockets. If the insurance industry as a whole, or a single major carrier should ever adopt the practice of refusing all claims until liability is established by judgment, the inevitable proliferation of courts would be monumental.

Insurance companies by reason of their size and scope wield immense power. Their resources are typically 1,000 times larger than the opponent's. They have the raw power to literally starve many claimants to death. Wherever power increases, so does responsibility. The court believes that insurance carriers have a special responsibility to negotiate with respect to settlement. In the main, the court finds that insurance carriers recognize and respond to that obligation. However, in the present case, the defendant's insurer has been intractable. Having incurred large amounts in

preparing and presenting its defense, the carrier now argues that it should not be saddled with the corresponding large costs of presenting the minor's claim. The contention is overruled. Defendants' insurer, being well aware of the probable costs of litigation and well able to afford same, chose to cause that expense to be incurred. The court finds no special circumstances existing in favor of defendant which would persuade the court that fundamental fairness precludes the court from awarding anything less than full and adequate compensation to the guardian. The guardian ad litem's fee claim is approved.

■■■■ Ordinarily the decision of a trial court regarding reasonable compensation for a guardian ad litem will not be overturned unless there is a clear abuse of discretion apparent from the record. *Poston v. Poston*, 572 S.W.2d 800, 802–03 (Tex.Civ.App.—Houston [14th Dist.] 1978, no writ); *Coastal States Gas Producing Co. v. Locker*, 436 S.W.2d 592, 596 (Tex. Civ.App.—Houston [14th Dist.] 1968, no writ); *City of Houston v. Watson*, 376 S.W.2d 23, 33 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.). Abuse of discretion contemplates something less than bad faith or intentional wrong by the court, but something more than an error in judgment. The test is whether the trial court's decision was arbitrary or unreasonable. *Landry v. Travelers Insurance Co.*, 458 S.W.2d 649, 651 (Tex.1970); *Pratt v. Texas Department of Human Resources*, 614 S.W.2d 490, 494 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.); *Bennett v. Northcutt*, 544 S.W.2d 703, 707 (Tex.Civ.App.—Dallas 1976, no writ). Moreover, in attacking the size of the guardian ad litem award, a party ordinarily does not have the burden to show that the trial court had no good cause to adjudge costs as it did. *Siepert v. Brewer*, 433 S.W.2d 773, 775 (Tex.Civ.App.—Texarkana 1968, writ ref'd n.r.e.).

■■■■ We hold that treating a defendant differently because a trial court perceives the existence of insurance is patently arbitrary and unreasonable. It is apparent from the record that the amount of the ad litem fee award was based solely on the trial court's perception of Dawson as a straw defendant with the defense conducted and paid for by an insurance company. We conclude that the decision of the trial court in regard to the amount of the ad litem award was intended to punish some unknown and unnamed insurance carrier who the trial court perceived to be liable to pay all or a part of the judgment. It necessarily follows that such action was arbitrary and unreasonable. We conclude, therefore, that the trial court abused its discretion by awarding excessive and unreasonable guardian ad litem fees.

■■■■ We now consider whether we may fix the proper amount of the guardian ad litem fee, and if so, what amount of fee should be awarded and against which party or parties should the fee be taxed. In determining whether an award of attorney's fees is excessive an appellate court has the authority in looking at the entire record to draw on the common knowledge of the justices of the court and their experience as lawyers and judges and to view the matter in the light of the testimony, the record and amount in controversy. *Tuthill v. Southwestern Public Service Co.*, 614 S.W.2d 205, 213 (Tex.App.—Amarillo 1981, writ ref'd n.r.e.); *Golden v. Murphy*, 611 S.W.2d 914, 916 (Tex.App.—Houston [14th Dist.] 1981, no writ); *Knopf v. Standard Fixtures Co. Inc.*, 581 S.W.2d 504, 507 (Tex.Civ.App.—Dallas 1979, no writ). We conclude that by the same process an appellate court has the same authority concerning a guardian ad litem's fee. Moreover, a Court of Appeals has the power to render the judgment which it deems should have been rendered by the trial court where it appears on the face of the record that modification in the judgment should be made and justice requires it. *Carter v. Barclay*, 476 S.W.2d 909, 918 (Tex.Civ.App.—Amarillo 1972, no writ). In the present case we conclude that on the face of the record modification of the excessive and unreasonable guardians ad litem's fee awarded by the trial court should be made

and that justice requires this court make such modification under its power to render the judgment which should have been rendered by the trial court. Accordingly, we conclude that in the present case we are not required to remand to the trial court for further consideration of the amount of the guardian ad litem's fee and that this court is authorized to fix the proper amount of the guardian ad litem's fee.

It is obvious that the trial court sought to justify the $7,254.00 fee awarded by converting the service rendered from that of guardian to that of trial attorney. Indeed, the trial court calculated the fee by multiplying ninety dollars ($90.00) per hour times the eighty and six tenths (80.6) hours the guardian testified he expended on behalf of the minor and tells us in his supplemental findings and conclusions that the guardian "has testified to a rate of ninety dollars ($90.00) per hour which, in this inflationary era, the court finds to be a reasonable hourly fee to be ordinarily expected of an *attorney* of [his] ability and experience." [emphasis added]. On this record there was no reason for the guardian to serve as an attorney in this matter. All the Garcias, minor and adult, had a competent attorney. There was no conflict of interest between the minor and the adult Garcias. The adult Garcias never took a position adverse to the minor Garcia. Dawson, however, does not challenge appointment of the guardian ad litem as error.

A guardian ad litem is not an attorney for the infant, but an officer appointed by the court to assist it in properly protecting the infant's interests. *Stanton v. Sullivan*, 62 R.I. 154, 4 A.2d 269, 270 (1939). A guardian ad litem is the *personal representative* of an individual subject to a disability who is appointed to protect the interests of the disabled person in any lawsuit where that individual is a party. *Pleasant Hills Children's Home of the Assemblies of God, Inc. v. Nida*, 596 S.W.2d 947, 951 (Tex.Civ.App.—Fort Worth 1980, no writ) [emphasis added]. The legislature has recognized a distinction between

guardian ad litem and attorney ad litem. The TEX.FAM.CODE ANN., § 11.10 (Vernon Supp. 1982–1983), in subsection (a) authorizes appointment of a guardian ad litem and in subsection (c) authorizes appointment of an attorney. Thus, under the facts of the present case, we conclude that a distinction between guardian ad litem and attorney ad litem must be recognized. Accordingly, we modify the award of guardian ad litem fees so as to delete compensation for services rendered on behalf of the minor as an attorney at law and conclude that the amount of $500.00 would be an appropriate sum to compensate the guardian ad litem for his services as a personal representative of the minor in the lawsuit.

A fee allowed a guardian ad litem appointed to protect the interests of a minor is considered to be a cost incurred by the party or parties whose conduct made the appointment necessary, and no part of the fee should be taxed against other parties to the suit unless facts or circumstances are shown by the record from which it clearly appears that he or they should, in fairness, be required to pay part or all of the fee. *Minns v. Minns*, 615 S.W.2d 893, 897 (Tex.Civ.App.—Houston [1st Dist.] 1981). In the present case the jury found Dawson negligent and awarded the minor damages, among others, for his medical expenses. Dawson challenges neither the jury's negligence finding nor its award of damages for medical expenses. Accordingly, we conclude that Dawson's conduct in the operation of his automobile causing the minor to suffer damages for medical expenses made the appointment of the guardian ad litem technically necessary and, therefore, that the $500.00 guardian ad litem fee should be taxed against Dawson as costs in the trial court.

*Separate or Community Recovery and Judgment Offset.*

In his sixth point Dawson contends that the trial court erred in not allowing his judgment against Louisa Garcia, as community administratrix of the estate of Nick Garcia, in the sum of $3,902.09 to be ap-

plied as an offset against the Garcias' judgment awards against him for the Garcias' medical expenses, lost earnings and lost earning capacity. Dawson argues that these items of the Garcias' judgment recovery constitutes community property. The Garcias argue that none of their judgment damages are assets of the community and, therefore, are not subject to offset. The time of Nick Garcia's death bears on the arguments of both sides. The Garcias insist Nick's death came too soon for the judgment damages to be community. Dawson asserts the medical expenses and loss of earning capacity were sustained during the existence of the community and, therefore, belonged to the community, and thereafter to the estate. During the judgment phase of the trial, Dawson requested the trial court to allow Dawson's judgment as cross-plaintiff to be applied as an offset against the Garcias' judgment for recovery of medical expenses and loss of earnings and earning capacity. The trial court refused to offset any sums awarded by way of judgment against the award to any other party.

In order to determine whether the Garcias' judgment damages for medical expenses were assets of the community estate, the time of Nick Garcia's death becomes important. The Garcias suggest that Nick Garcia died two hours after the collision. The collision occurred sometime between 1:00 o'clock p.m. and 1:45 o'clock p.m. on August 15, 1976. There is, however, no evidence in the record as to the actual date or time when Nick Garcia died. The only evidence which suggests a time of death is that Alberto Garcia was informed on the day after the accident that his father had died. Nick Garcia was alive at the time the ambulance delivered him to the hospital. Dawson argues that because there is no evidence on the record of the actual time of death, it must be presumed that Nick Garcia died when Alberto Garcia was informed of his father's death, that is, August 16, 1976. We agree. In Texas, there is a presumption that life continues if the person is alive when last heard from. *Gorham v. Settegast,* 44 Tex.Civ.App. 254,

98 S.W. 665, 668 (1906, writ dism'd). Because Nick Garcia was alive when last seen by any of the witnesses who testified at trial, the presumption of the continuance of life was raised. Thus, Nick Garcia was presumed to be alive until some evidence would indicate to the contrary, namely, when Alberto Garcia was advised of the death of Nick Garcia. We conclude, therefore, that the time of death of Nick Garcia must be presumed to be sometime on August 16, 1976.

Next, we consider when the judgment damages for medical expenses accrued. The trial court submitted special issues to the jury for a determination of each Garcias' damages in the form of medical expenses and Louisa Garcia's loss of earnings and earning capacity. The jury awarded Alberto Garcia $190.50, for hospital treatment of $170.50 on August 15, 1976, and ambulance service of $20.00 on August 15, 1976. The jury awarded Isabel Garcia Carranza $82.75, (incurred while an unmarried minor) for hospital treatment on August 15, 1976. The jury awarded Louisa Garcia $1,000.00 for her medical expenses, which was properly reduced in the judgment to the amount ($180.00) actually proved. This represented $160.00 for a doctor's bill for service rendered on February 21, 1977, and $20.00 for ambulance service on August 15, 1976. Thus, with the exception of the $160.00 doctor's bill for services to Louisa Garcia on February 21, 1977, it is clear from the evidence that the jury findings related to expenses incurred while Nick Garcia was still alive. Although recovery for personal injuries to the body of the wife are separate property of the wife, recovery for medical expenses incurred by the marital partnership is community property. *Graham v. Franco,* 488 S.W.2d 390, 396 (Tex.1972). We conclude that in the present case the marital partnership incurred all of the medical expenses of the two Garcia children and Mrs. Garcia which are at issue with the exception of the above mentioned $160.00. Accordingly, we conclude that the Garcias' judgment damages for medical expenses in

the amount of $293.25 were assets of the community estate.

■■■■ This brings us to the jury award to Louisa Garcia of $2,500.00 for her loss of earnings and earning capacity, both past and future. Recovery for loss of earnings and earning capacity is community property of husband and wife. *Graham,* 488 S.W.2d at 396. The Garcias contend that the community estate ceased to exist upon the death of Nick Garcia and that, therefore, the recovery for loss of earnings and earning capacity is not community property. While we agree that the marriage ceased to exist upon the death of Nick Garcia, we disagree that the recovery for loss of earnings and earning capacity is not a community asset of the prior marriage. To the extent that the marital partnership has lost wages, both spouses have been damaged by the injury to the spouse; and both spouses have a claim against the wrongdoer. The recovery therefore is community in character. *Graham,* 488 S.W.2d at 396. We conclude that the cause of action for Louisa Garcia's loss of earnings and earning capacity arose at the moment Louisa was injured. At that moment Nick Garcia was alive and a community estate existed. Nick Garcia survived that moment and the community estate continued. Thus the community estate was entitled to be compensated for the loss of earnings and earning capacity of Louisa Garcia which could thereafter be proved to have followed the injuries suffered by Louisa Garcia. Merely because the evidence proving loss of earnings and earning capacity and the amount required to compensate for that loss might have occurred in point of time after Nick Garcia's death cannot change the status of a cause of action from community to separate. The community status of recovery for loss of earnings and earning capacity recognized in *Graham,* 488 S.W.2d at 396–97, does not rest on the length of time following injury to one spouse that the other spouse survives. Accordingly, we conclude that in the present case the Garcias' judgment damages for Louisa Garcia's loss of earnings and earn-ing capacity, both past and future, were assets of the community estate.

■■ Because of our conclusions that certain of the medical expenses and the loss of earnings and earning capacity of the Garcias belonged to the community, and after the death of Nick Garcia to the community estate, it follows, and we so hold, that Dawson was entitled to have the judgment in his favor and against Louisa Garcia, as community administratrix of the estate of Nick Garcia, in the amount of $3,902.09 applied as an offset against that part of the judgment in favor of the Garcias which constitutes a part of the community estate of Louisa and Nick Garcia in the amount of $2,793.25. We conclude, therefore, that the trial court erred in failing to allow Dawson to offset his judgment.

### Pre-Judgment Interest.

■■ In his seventh point Dawson contends that the trial court erred in awarding pre-judgment interest on medical expenses incurred by the Garcias because such interest was not pleaded and, in any event, is not recoverable as a matter of law. For the purposes of this opinion we assume, but do not decide, that the pre-judgment interest awarded by the trial court is recoverable as a matter of law. Thus, we reach the question of whether such interest may be recovered under the Garcias' pleadings.

The Garcias went to trial on their second amended original petition and point solely to the prayer for relief in that pleading as supporting the award of pre-judgment interest:

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendant will be cited to appear and answer herein, and that upon final hearing hereof they will have and recover of and from Defendant their money damages in the total sum of Four Hundred Thousand Dollars ($500,000.00) [sic], as well as all costs of suit, and for such other and further relief to which they may be entitled either at law or in equity.

We conclude that the Supreme Court's language in *Black Lake Pipe Line Co. v.*

*Union Const. Co.*, 538 S.W.2d 80, 96 (Tex. 1976), disposes of the issue:

> Although prejudgment interest is recoverable as a matter of right in certain cases, this court has not dispensed with the requirement that the petition contain pleadings to support an award of prejudgment interest. By failing to plead for prejudgment interest a plaintiff may waive his right to it. (Citations omitted.)

In *Black Lake* the Supreme Court went on to hold that since the trial pleadings in that case contained a prayer "for reasonable attorney's fees, *interest* and costs," [emphasis added], the prayer was sufficient to support the award of pre-judgment interest. In the present case the word "interest" is absent from the prayer. Accordingly, we conclude that the Garcias, having failed to plead for the recovery of interest, waived their right to recover pre-judgment interest. Therefore, we conclude further that the trial court erred in awarding the Garcias pre-judgment interest on their medical expenses.

We reverse the judgment of the trial court insofar as it awards Alberto Garcia, a minor, the sum of $2,190.50; plus interest on $190.50 at six percent (6%) per annum from January 1, 1977, to date of judgment and we render judgment that Alberto Garcia take nothing against Dawson. We reverse the judgment of the trial court insofar as it awards Isabel Garcia Carranza the sum of $2,082.75; plus interest on $82.75 at 6% per annum from January 1, 1977, to date of judgment and we render judgment that Isabel Garcia Carranza take nothing against Dawson. We reverse the judgment of the trial court insofar as it awards Louisa Garcia, individually, the sum of $4,680.00; plus interest on $180.00 at 6% per annum from January 1, 1977, to date of judgment and we render judgment in favor of Louisa Garcia, individually, and against Dawson in the sum of $160.00 together with interest thereon at the rate of nine percent (9%) per annum from September

27, 1982, the date of the trial court's judgment. We reverse the judgment of the trial court insofar as it awards Diamond J. Pantaze, as guardian ad litem, the sum of $7,254.00 as fair and reasonable compensation to the guardian ad litem; and we render judgment that Diamond J. Pantaze, as guardian ad litem, be awarded a fee as guardian ad litem in the sum of $500.00 and taxed as costs in the trial court to be paid by Dawson. The judgment of the trial court insofar as it awards Dawson the sum of $3,902.09 plus interest on $2,407.34 at 6% from January 1, 1977, to date of judgment is modified and the judgment award in favor of Dawson and against Louisa Garcia, as community administratrix of the estate of Nick Garcia is reduced to the sum of $1,108.84 together with interest thereon at the rate of nine percent (9%) per annum from September 27, 1982, the date of the trial court's judgment.[1] Other than the guardian ad litem's fee awarded by this court, all costs in the trial court and in this court are taxed against Louisa Garcia, as community administratix of the estate of Nick Garcia.

SPARLING, Justice, dissenting.

I respectfully disagree with the majority opinion which states "justice does not require a remand." I further disagree with the majority for setting the amount of the guardian *ad litem* fee and charging Dawson, alone, with the *ad litem* costs. Accordingly, I dissent.

I believe that a "reverse and render" of the judgment for the passengers of the Garcia automobile is unduly harsh. They suffered legitimate injuries for which Dawson and the Garcia estate are jointly liable. The majority denies recovery because the passengers did not join Dawson in objecting to that portion of the charge that combined damages. The failure to delineate damages in the charge is not *per se* error, but only became error—says the majori-

---

1. The Garcias do not complain of the award to Dawson of pre-judgment interest on his medical expenses, however, in view of the offset we are unable to determine the amount upon which Dawson should recover pre-judgment interest nor does Dawson tell us an amount. Therefore, we eliminate Dawson's pre-judgment interest.

ty—because we held that the passengers were not entitled to bystanders' damages. A remand under these circumstances would not be just another "bite of the apple" but rather would result in a redetermination of damages which have been properly pleaded and proved. Thus, in the interest of justice, I would reverse and remand. *Morrow v. Shotwell,* 477 S.W.2d 538, 542 (Tex.1972); *Moulton v. Alamo Ambulance Service, Inc.,* 414 S.W.2d 444 (Tex.1967), 402 S.W.2d 200; *Truck Farm, Inc. v. Allen,* 608 S.W.2d 296, 298 (Tex.App.—Dallas 1980, no writ).

The majority "conclude[s] that the amount of $500.00 would be an appropriate sum to compensate the guardian *ad litem.*" Yet the majority cites no applicable authority for substituting its discretion for the discretion of the trial court. I would hold that our authority extends no further than to declare the amount an abuse of discretion and remand to the trial court for further consideration.[1] *Garza v. Brazos County Federal Credit Union,* 603 S.W.2d 298, 301 (Tex.App.—Waco 1980, no writ); *Vaughn v. Gunter,* 458 S.W.2d 523, 529 (Tex.Civ.App.—Dallas 1970, writ ref'd n.r. e.). I would further hold that the *ad litem* costs be taxed against Dawson *and* the Garcia estate, jointly and severally. The record does not recite good cause for taxing the costs against anyone other than the losing party. TEX.R.CIV.P. 131, 141. Because the Garcia estate is jointly liable and thus a losing party, it should be equally responsible for the costs.

---

1. Although this court is empowered to tax reasonable ad litem fees to a different party than did the trial court, *Seipert v. Brewer,* 433 S.W.2d 773, 775 (Tex.App.—Texarkana 1968); and to demand a remittitur as a substitute for reversal, *Reintsma v. Greater Austin Apartment Maintenance,* 549 S.W.2d 434, 438 (Tex.App.—Austin 1977); I would not consider these powers as authority to set an amount of ad litem fees.